[No. F002400. Fifth Dist. Dec. 5, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON BIRREUTA, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Parts I, II and III are not published as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Christine Zilius, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Joel Carey and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.—**

### INTRODUCTION

Appellant killed his wife, Nellie Amavisca, and a neighbor, JoAnn Raborn, after a long evening of conflict. Both victims were very drunk. Police

responded to a "shots fired" call and found appellant walking down the street carrying a rifle. On request, appellant handed the gun to the officers. Appellant was then put in handcuffs and placed in the back of a patrol car. When appellant's stepdaughter told them some of what had happened, the officers went to Ms. Raborn's house and found her body on the bedroom floor. She had six gunshot wounds and two stab wounds. Appellant's wife's body was lying on the bed. She had been shot four times at close range.

Appellant's defenses were self-defense, unreasonable self-defense, provocation, heat of passion, intoxication and other theories that might justify the homicides or reduce the degree of the offenses from first to second degree murder or to manslaughter. Appellant's self-defense theories were drawn from a fight with Ms. Raborn in which she threatened appellant with a knife and then a gun. The jury was instructed on transferred intent. This instruction was given immediately after the instructions on homicide and proximate cause. It is not clear whether the transferred intent instruction was requested or whether it was given by the trial court on its own motion (the People's request for instructions does not list it, appellant's request is not in the clerk's transcript, and no hearing on the instructions is in the record).

After a jury trial, appellant was convicted of two counts of first degree murder with use of a firearm, and the jury found the special circumstance (multiple murder under Pen. Code, § 190.2, subd. (a)(3)) true. Appellant was sentenced to two concurrent terms of life without parole, and firearm enhancements were stayed.

For the reasons to be explained, we reverse appellant's conviction of the first degree murder of his wife and the special circumstance finding. We affirm the conviction of the first degree murder of JoAnn Raborn and the firearm enhancement.

## DISCUSSION

### I

*Appellant's Marsden Motion**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

*See footnote 1, *ante*.

## IV

### *Transferred Intent Instruction*

Appellant was charged with and convicted of two murders. He confessed to killing JoAnn Raborn, but denied knowing that his wife was in the room or that he intended to kill her. The evidence indicates that the bedroom where the shooting occurred was dark. Appellant told police that he went into the bedroom and shot JoAnn, started to leave, heard a noise, turned and fired again (apparently thinking that he was again shooting JoAnn). If appellant's story is believed, the killing of his wife was accidental. The jury was instructed using CALJIC No. 8.65 (4th ed. 1979) on transferred intent.[3] Appellant argues that his conviction for first degree murder of his wife must be reversed because this instruction is invalid, anachronistic, unfair and inappropriate in first degree murder cases, particularly when the intended victim is also killed.[4]

The transferred intent doctrine has been explicitly approved by the California Supreme Court. (*People* v. *Sears* (1970) 2 Cal.3d 180, 189 [84 Cal.Rptr. 711, 465 P.2d 847]; *People* v. *Antick* (1975) 15 Cal.3d 79, 88-89 [123 Cal.Rptr. 475, 539 P.2d 43]; *People* v. *Sutic* (1953) 41 Cal.2d 483, 490-492 [261 P.2d 241].)

Although the validity of the transferred intent doctrine as a general proposition is not open to question at our level of the appellate process, its application to a case where the intended victim has been actually killed appears to be an open question. The only California appellate opinion that touches on the point does so in dicta, unsupported by any real analysis. (*People* v. *Carlson* (1974) 37 Cal.App.3d 349, 357 [112 Cal.Rptr. 321].) The most recent explanation of the transferred intent doctrine by the California Supreme Court is in somewhat ambiguous terms: "Where a defendant assaults one or more persons killing one, his criminal responsibility for the homicide should not depend upon which of the victims died but should be the greatest crime committed viewing each victim of the attack individually and without regard to which in fact died." (*People* v. *Sears, supra,* 2 Cal.3d 180, 189.)

---

[3]CALJIC No. 8.65 (4th ed. 1979) reads: "Where one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed."

[4]Perkins describes the "transferred intent" doctrine as a tort concept which serves a useful purpose in that field but has no proper place in criminal law. "In the field of crime this concept has the vice of being a misleading half-truth, often given as an improper reason for a correct result, but incapable of strict application." (Perkins on Criminal Law (2d ed. 1969) p. 822.)

The antecedent dependent phrase, "whe[re] a defendant assaults one or more persons killing one" suggests that the doctrine applies only when a single victim dies. (See *People* v. *Sutic, supra,* 41 Cal.2d at pp. 491-492.) The remainder of this quoted sentence, however, suggests that each death should be considered as a separate crime. If the intended victim dies, that is one murder; if the accidental victim also dies, arguably that is a second murder. If each homicide is viewed individually, it does not matter whether the intended victim dies. The "greatest crime," under this evidence, could be two first degree murders, one ordinary—the intended victim, and one via transferred intent—the accidental victim. (See *People* v. *Carlson, supra,* 37 Cal.App.3d at p. 357.)

■ Appellant argues that Penal Code section 654[5] bars application of the transferred intent doctrine. This argument depends on a strained attempt to avoid the rule that "even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence *committed against a different victim.*" *People* v. *Ramos* (1982) 30 Cal.3d 553, 587 [180 Cal.Rptr. 266, 639 P.2d 908], italics added, revd. on other grounds *California* v. *Ramos* (1983) 463 U.S. 992 [77 L.Ed.2d 1171, 103 S.Ct. 3446], on remand, *People* v. *Ramos* (1984) 37 Cal.3d 136 [207 Cal.Rptr. 800, 689 P.2d 430]; *People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) Murder is certainly a crime of violence, so this general rule *supports* appellant's convictions. Appellant attempts to avoid this rule by arguing that the same facts regarding intent and deliberation were used to convict appellant of first degree murder of his wife and Ms. Raborn and that there was no evidence of premeditation and deliberation regarding his wife. This difference, if it is a difference, does not take this case out of *Ramos'* language. There are still two victims of violent crime. The fact that appellant killed two victims is enough to avoid Penal Code section 654. (*People* v. *Flores* (1981) 115 Cal.App.3d 67, 76-77 [171 Cal.Rptr. 365].)

Appellant's argument that the transferred intent doctrine violates constitutional double jeopardy principles is subject to similar criticism. He relies on *People* v. *Wilder* (1981) 411 Mich. 328 [308 N.W.2d 112], a Michigan case which held that a defendant may not be convicted of both robbery and felony murder for the same acts. This case has not been followed in California, and California's law sharply diverges from Michigan's on felony-murder issues. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 465 [194 Cal.Rptr. 390, 668 P.2d 697].) California has already developed a rule avoiding dou-

---

[5]Penal Code section 654 reads: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

ble punishment under Penal Code section 654, and multiple convictions for robbery and felony murder are routine. (E.g., *People* v. *Dillon, supra.*) As noted by respondent, the purpose of the double jeopardy clause is to prevent multiple prosecutions for one act (*United States* v. *DiFrancesco* (1980) 449 U.S. 117, 129 [66 L.Ed.2d 328, 340-341, 101 S.Ct. 426]), not to prevent the state from separately punishing the killing of two or more people. (See, e.g., *People* v. *Carlson, supra,* 37 Cal.App.3d at p. 352; *People* v. *Majors* (1884) 65 Cal. 138, 146-147 [3 P. 597]; Annot., Single Act Affecting Multiple Victims As Constituting Multiple Assaults Or Homicides (1981) 8 A.L.R.4th 960, 964.)

A more convincing argument against use of the transferred intent doctrine in the circumstances of this case may be derived from the *purpose* of the doctrine. ■ The function of the transferred intent doctrine is to insure the adequate punishment of those who accidentally kill innocent bystanders, while failing to kill their intended victims. But for the transferred intent doctrine, such people could escape punishment for murder, even though they deliberately and premeditatedly killed—because of their "lucky" mistake. The transferred intent doctrine is born of the sound judicial intuition that such a defendant is no less culpable than a murderer whose aim is good. It insures that such a defendant will not be allowed to defend against a murder charge by claiming to have made a mistake of identity, a poor aim or the like.

When the intended victim is killed, however, there is no need for such an artificial doctrine. The defendant's premeditation, deliberation, intent to kill and malice aforethought are all directly employable in the prosecution for murdering his intended victim. The accidental killing may thus be prosecuted as a manslaughter or second degree murder without ignoring the most culpable mental elements of the situation. There is no danger that a premeditated killing will go unpunished or be treated as a manslaughter because the murder of the intended victim will presumably be the subject of prosecution.

We conclude that the interests of justice are best served by differentiating between killers who premeditatedly and deliberately kill two people, and killers who only intend to kill one person, and accidentally kill another. Both types should be punished for both killings, but the former type is clearly more culpable. In the first situation, the killer has committed two intended first degree murders. In the second situation—represented here by appellant according to his statement to police—the killer has committed one first degree murder and one second degree murder or manslaughter. If the transferred intent doctrine is applicable when the intended victim is killed, this difference disappears. Accordingly, we hold that the transferred intent

doctrine does not apply in this case because JoAnn Raborn, the intended victim, was killed. It was error to give the instruction.

V

### Appellant Was Prejudiced By the Transferred Intent Instruction

The transferred intent instruction was given as part of the homicide instructions. Appellant argues that when it came to deciding his culpability for the killing of his wife, the jury may have simply transferred its findings that he intended to kill JoAnn Raborn and that he deliberated and premeditated JoAnn's killing—to his wife; hence, he possibly was convicted of the first degree murder of his wife without the jury actually finding that he intended to kill her and premeditated and deliberated the killing as required by *People* v. *Anderson* (1968) 70 Cal.2d 15, 25 [73 Cal.Rptr. 550, 447 P.2d 942].

Respondent seeks to counter this argument by contending that appellant's first degree murder conviction for killing his wife was not dependent upon the transferred intent instruction but was based on "overwhelming" evidence that appellant deliberated and premeditated the killing of his wife as well as the killing of JoAnn. In other words, any error in the giving of the transferred intent instruction was rendered harmless in the light of the evidence that appellant intended to kill his wife.

Regardless of the sufficiency of the evidence to support a finding that appellant intended to kill his wife[6] and that he premeditated and deliberated the intended killing as required by *People* v. *Anderson, supra,* 70 Cal.2d 15, the transferred intent instruction must be deemed to have prejudiced appellant.

---

[6]Although by no means overwhelming, the evidence does support a finding that appellant intended to kill both his wife and JoAnn. Appellant was engaged in a dispute with both women. His wife was at JoAnn's apartment, and appellant tried to get her to come home. After struggling with JoAnn, appellant picked up the gun, retreated to his house, then went back to JoAnn's apartment, broke into it and shot JoAnn six times and his wife four times. These facts support reasonable inferences of motive and planning. (See *People* v. *Anderson, supra,* 70 Cal.2d at pp. 26-27.) The fact that appellant shot his wife four times in the chest and abdomen at close range demonstrate an intent to kill.

What makes the case close on the question of appellant's premeditation and deliberation in the killing of his wife is that the evidence also supports a finding that appellant killed his wife in the course of a ". . . sudden quarrel or heat of passion" (Pen. Code, § 192) arising out of the lengthy argument and fight involving two drunken women. Whether such a quarrel was "sudden" or in a heat of passion sufficient to arouse a reasonable man (CALJIC Nos. 8.40, 8.42, 8.49, 8.50) to reduce the crime to voluntary manslaughter were jury questions. But these questions should have been presented to the jury without any confusing concept of "transferred intent."

■ It is fundamental that a trial judge has a *sua sponte* duty to instruct the jury on all of the essential elements of the offense actually charged. (*People* v. *Ford* (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892]; *People* v. *Hamilton* (1978) 80 Cal.App.3d 124, 125 [145 Cal.Rptr. 429].) Implicit in this rule, of course, is that the jury be *correctly* instructed on the essential elements of the offense. The failure to so instruct is error whenever there is any evidence deserving of any consideration from which the jury could have found in favor of the defendant on the omitted or correctly defined elements. Because such an error is a denial of the defendant's constitutional right to have the jury determine every material issue presented by the evidence, regardless of how overwhelming the evidence of guilt may be, the error cannot be cured by weighing the evidence and finding that it is not reasonably probable that a correctly instructed jury would have reached a result more favorable to the defendant. (*People* v. *Hamilton, supra,* 80 Cal.App.3d at p. 133.)

Stated another way, when the prosecution (or the court) presents the case to the jury on alternate theories, some of which are legally correct and others not legally correct and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand. (*People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468]; *People* v. *Robinson* (1964) 61 Cal.2d 373, 406 [38 Cal.Rptr. 890, 392 P.2d 970].)

■ Although the jury in the present case was correctly instructed on the law of premeditated murder, it was also told that "where one intends to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed." It would take a most sophisticated juror to understand that this instruction did not allow the jury to transfer appellant's intent to kill JoAnn to his wife because JoAnn was, in fact, killed. To the contrary, it is quite reasonable to conclude that a rational juror would have believed the trial court gave the transferred intent instruction because it was important to the case, i.e., it pertained to appellant's testimony that he did not intend to kill his wife and did not even know that she was in the room when he fired the gun. Because the room apparently was dark at the time of the shooting, appellant's story is not "inherently unbelievable" or "physically impossible," and it was entitled to consideration by the jury. By giving the transferred intent instruction, the court in a sense was telling the jury that the instructions on premeditated murder applied only to the killing of JoAnn and not to the killing of appellant's wife.

In sum, the erroneous transferred intent instruction so permeated the question of appellant's mental state in killing his wife and so essentially de-

stroyed the efficacy of appellant's defense that he did not intend to kill his wife, the instruction probably affected the result. Thus, appellant's conviction of the first degree murder of his wife must be reversed.

## VI

### *Disposition*

Appellant's conviction for killing his wife Nellie Amavisca and both of the attendant special circumstances findings under Penal Code section 190.2, subdivision (a)(3), are reversed. The conviction for murdering JoAnn Raborn and its attendant firearm use enhancement is affirmed. In this posture of the case, appellant's arguments regarding sentencing issues and the special circumstances law are moot. Upon retrial for the killing of Nellie Amavisca, the only special circumstance that can be alleged is a prior conviction of murder (Pen. Code, § 190.2, subd. (a)(2)), not multiple convictions in the same proceeding (Pen. Code, § 190.2, subd. (a)(3)). As a result, appellant's arguments attacking the wording of Penal Code section 190.2, subdivision (a)(3), need not be addressed. The cause is remanded for resentencing on the affirmed counts and retrial of the others.

Hamlin, J., and Hardin, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.