## ARTURO TORRES OCHOA, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 31819

August 20, 1999          981 P.2d 1201

*Morgan D. Harris,* Public Defender, and *Robert L. Miller* and *Willard N. Ewing,* Deputy Public Defenders, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland* and *Eric G. Jorgenson,* Chief Deputy District Attorneys, Clark County, for Respondent.

Before MAUPIN, AGOSTI and BECKER, JJ.

## OPINION

By the Court, BECKER, J.:
Appellant Arturo Torres Ochoa (Ochoa) shot and killed Luis

Ortiz (Ortiz). One of the shots intended for Ortiz struck a bystander, Ricky Smith (Smith). Ochoa appeals his conviction contending that the trial court erred by: (1) applying the doctrine of transferred intent to the charge of attempted murder involving Smith; (2) allowing testimony regarding Ochoa's prior drug transactions with Keith Harriman (Harriman) and Ortiz; and (3) denying Ochoa's motion to dismiss for prosecutorial misconduct. We disagree and affirm the judgment.

## FACTS

Shortly before the shootings in this case, Smith went to an apartment building in Las Vegas to purchase cocaine. Ortiz was sitting in front of the building holding a baseball bat. Smith approached Ortiz, negotiated a price for some cocaine, and Smith paid Ortiz for the cocaine.[1] After Smith paid Ortiz, Ortiz stood up and went to talk to Ochoa who was seated in a nearby vehicle. Smith described the conversation as "hostile." Ochoa fired several shots at Ortiz. Ortiz was killed and Smith was wounded.

Ochoa testified that he shot Ortiz in self-defense. Ochoa stated that Ortiz, accompanied by an unidentified man, opened the car door with a baseball bat in his hand, ordered Ochoa to give the car to Ortiz and raised the bat in a menacing manner. Ochoa claimed he thought Ortiz was going to hit him with the bat so he fired several shots at Ortiz. Ochoa stated he never intended to shoot Smith and that Smith was wounded by accident.

The prosecution argued that the shooting was part of an ongoing dispute between Ochoa and Ortiz over a car, as well as interference by Ortiz with Ochoa's drug transactions. In support of this theory, the state offered evidence demonstrating Ochoa's involvement with the drug trade. Following an evidentiary hearing, the district court ruled that only prior transactions involving Harriman and Ortiz would be admissible.

Harriman testified that he purchased cocaine from Ochoa on several occasions. Harriman owned a used car lot and part of the consideration for his cocaine purchases was the use of a car from the lot or a discount on the price of a car. The day before the shooting, Harriman tried to buy cocaine from Ochoa. Ochoa had no cocaine. Ortiz was present during this transaction. After Ochoa could not satisfy Harriman's needs, Ortiz sold cocaine to Harriman. Harriman paid for the cocaine by agreeing to provide a car to Ortiz. Harriman stated that after his deal with Ortiz, Ochoa and Ortiz argued about a car, though Harriman was unable to hear the details of the dispute.

---

[1] Smith testified that he gave money to Ortiz and that Ortiz then walked over to Ochoa's car. Smith did not indicate he received cocaine from Ortiz.

In support of his theory of self-defense, Ochoa solicited the testimony of Gerald Peters (Peters) who stated that Ortiz had previously threatened Peters with a baseball bat. To rebut this testimony, during cross-examination, the prosecution questioned Peters about an incident between Peters and Ochoa in which Ochoa threatened Peters with a gun. The following colloquy took place:

> Q   [State]: Why didn't you—what was your statement to the police as far as why he [Ochoa] pulled a gun on you?
> A:   It's to do with him selling rocks.
> Q:   This is the defendant right?
> A:   The defendant.

Defense counsel objected, and the objection was sustained. Counsel moved for a dismissal on the grounds that the question violated the district court's ruling regarding Ochoa's previous drug transactions. The district court determined that the question was not intended to solicit information about Ochoa's drug activities and denied the motion to dismiss. The district court indicated it would give a cautionary instruction on the issue; however, defense counsel chose not to request such an instruction.

## DISCUSSION

### I.   Doctrine of Transferred Intent

As a general proposition, a person cannot be held criminally responsible for an offense unless the state proves, beyond a reasonable doubt, all of the essential elements of that offense. Intent to kill a human being is an element of attempted murder. Ochoa contends he cannot be convicted of attempting to murder Smith since there is no evidence that he ever intended to kill Smith. The state argues that there was no need to present evidence of any intent to kill Smith because Ochoa's intent to kill Ortiz can be attributed to Smith applying the doctrine of transferred intent.

The doctrine of transferred intent is a theory of imputed liability. It was developed to address situations where a defendant, intending to kill A, misses A and instead accidentally kills B. Without the doctrine, the individual responsible for B's death could not be charged with murder because there was never an intent to kill B.

Rather than allow an individual who intended to commit murder to escape full responsibility for his conduct simply because he killed the wrong person, the doctrine of transferred intent was established. The intent to kill A would be transferred or imputed

to victim B. "The doctrine of transferred intent was created to avoid the specific intent requirement and thus hold the defendant accountable for the consequences of his behavior when he injures an unintended victim." State v. Wilson, 863 P.2d 116, 121 (Wash. Ct. App. 1993), *rev'd in part on other grounds,* 883 P.2d 320 (Wash. 1994).

Ochoa stresses that this is not the traditional "bad aim" case where the perpetrator misses the intended victim and accidentally hits an unintended victim. Here Ochoa intended to kill, and did kill, Ortiz. Ochoa argues that since the intended victim was killed, the intent to kill cannot be transferred to the unintended victim, Smith.

While imputed liability through transferred intent is most often seen in "bad aim" situations, the rationale of the doctrine need not be limited to such cases. Theoretically, the doctrine applies in any case where there is intent to commit a criminal act and the only difference between the actual result and the contemplated result is the nature of the personal or property injuries sustained. *See* P.H. Robinson, *Imputed Criminal Liability,* 93 Yale L.J. 609 (1984).

The doctrine of transferred intent is based upon a legal fiction that imposes criminal liability upon a person based upon his or her participation in a factual scenario which creates harm to persons or property. Direct proof of a particular element of a crime is not required because the requisite element is imputed from the conduct of the defendant. There are numerous applications of this concept in criminal jurisprudence. The felony-murder and co-conspirator culpability rules are prime examples of imputed liability because the conduct of one actor in a crime is imputed to all the participants of that crime. *Id.* at 611.

Professor Robinson identifies four justifications for imputing an absent element of a criminal offense. One of these justifications, known as the equivalency theory, is the most commonly applied rationale for the transferred intent doctrine. Under this theory, if the actual harm or crime is the equivalent of the harm or crime intended to be committed, then liability for the intended harm should be imputed to the actual harm. Thus the culpability actually present should be equivalent to the culpability required by the charged offense. *Id.* at 648.

The rationale supporting the equivalency theory applies to the instant case. When Ochoa fired shots at Ortiz, the actual culpa-

bility (i.e., intent to kill) is equivalent to the culpability of the charged crime, attempted murder (i.e., an intent to kill that fails to succeed). The actual result (two people harmed) differs from the contemplated result (one person harmed.) However, the culpable mental state (intent to kill) in the contemplated result remains unchanged in the actual result. The identity or number of persons injured is not relevant to the equivalency rationale.

The fact that the equivalency theory of imputed liability can be used in this case to support the application of the transferred intent doctrine does not answer the question of whether, as a matter of public policy, the doctrine should be applied to any given situation. Other courts have addressed the issue of expanding the doctrine of transferred intent to cases where both the intended and unintended victims have been injured or killed.

Ochoa urges the court to adopt the rationale of People v. Birreuta, 208 Cal. Rptr. 635 (Ct. App. 1989). *Birreuta* held that the doctrine of transferred intent would not be applied where the intended victim was actually killed and a bystander was also accidentally killed. Since the perpetrator will be punished for the actual killing, and his "intent to kill" was directed at only one person, the perpetrator should not also suffer punishment for that single intent as a result of an accidental injury to third persons.

In contrast to *Birreuta,* the Connecticut Supreme Court held that the doctrine applies regardless of whether or not the intended victim was injured. In State v. Hinton, 630 A.2d 593, 603 (Conn. 1993), the court noted that:

> When a defendant contemplates or designs the death of another, the purpose of deterrence is better served by holding that defendant responsible for the knowing and purposeful murder of the unintended as well as the intended victim. Hence, we reject defendant's argument that the successful killing of the intended victim prevents the transfer of that intent to an unintended victim.

*See also* State v. Warlock, 569 A.2d 1314 (N.J. 1990). We agree with the *Hinton* rationale.

Although *Birreuta* and *Hinton* involved charges of murder, there is no reason not to apply the doctrine of transferred intent to other situations where the criminal charges relating to the intended and unintended victims differ but the specific intent required for the crimes remains the same. For example, in State v. Stringfield, 608 P.2d 1041 (Kan. Ct. App. 1980), the Kansas Court of Appeals applied the doctrine in a case of aggravated battery. In *Stringfield,* the defendant fatally shot the intended victim while at the same time wounding a child in the vicinity of the shooting. Because the facts showed the defendant only had the intent to injure the

intended victim, he was convicted of voluntary manslaughter as to the intended victim and aggravated battery[2] as to the unintended victim. The crimes differed, but the intent to injure was the same.

Accordingly, the doctrine of transferred intent is applicable to all crimes where an unintended victim is harmed as a result of the specific intent to harm an intended victim whether or not the intended victim is injured. Since there was sufficient evidence that Ochoa intended to kill Ortiz, that intent may be transferred to the unintended victim, Smith. As Smith did not die, the appropriate charge was attempted murder.

Having held that the transferred intent doctrine is applicable, we conclude, after viewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found the essential elements of attempted murder beyond a reasonable doubt. *See* Hutchins v. State, 110 Nev. 103, 107-08, 867 P.2d 1136, 1139 (1994).

## II.  *Harriman Drug Transactions*

Ochoa contends that the trial court erred in allowing testimony regarding Ochoa's prior drug transactions with Harriman and Ortiz. Ochoa asserts that this evidence was irrelevant, that its probative value was substantially outweighed by the danger of unfair prejudice, and that it was improperly admitted under NRS 48.035(3).[3] We conclude that the testimony at issue was admissible under NRS 48.035(3). The drug transactions at issue were so interconnected to the dispute between Ochoa and Ortiz that Harriman could not have accurately described the nature of that dispute without referring to the drug transactions. *See* Powell v. State, 108 Nev. 700, 707-08, 838 P.2d 921, 926 (1992), *vacated on other grounds,* 511 U.S. 79 (1994).

The evidence of drug transactions is also admissible under NRS 48.045(2).[4] Ochoa argued the shooting was self-defense. It is

---

[2]In Kansas, aggravated battery, like attempted murder, is a specific intent crime.

[3]NRS 48.035(3) provides:

> Evidence of another act or crime which is so closely related to an act in controversy or a crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime shall not be excluded, but at the request of an interested party, a cautionary instruction shall be given explaining the reason for its admission.

[4]NRS 48.045(2) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity

clear from the record that the incidents are relevant to establish animosity between Ochoa and Ortiz and go to show motive and rebut the assertion of self-defense. The record also supports a finding that the acts were proven by clear and convincing evidence and that the probative value of the acts was not substantially outweighed by the danger of unfair prejudice. Accordingly, this evidence was admissible under NRS 48.045(2). *See* Tinch v. State, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997).

### III. *Motion to Dismiss*

Ochoa asserts that the district court erred in denying his motion to dismiss for prosecutorial misconduct based upon an alleged violation of a court order forbidding reference to Ochoa's non-Harriman drug transactions. We conclude Ochoa's contention lacks merit. The unsolicited testimony at issue was insubstantial and, at most, only slightly prejudicial. *See* Sheriff v. Fullerton, 112 Nev. 1084, 1098, 924 P.2d. 702, 711 (1996) (holding that a motion to dismiss for prosecutorial misconduct can only be granted where the misconduct is clearly substantial and prejudicial).

Accordingly, we affirm the district court's judgment.

MAUPIN and AGOSTI, JJ., concur.

---

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.