[No. B159879. Second Dist., Div. Four. Mar. 21, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFREDO GOMEZ, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B. and C. of the Discussion.

**COUNSEL**

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kyle S. Brodie and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

A jury convicted defendant Alfredo Gomez of two counts of first degree murder with a personal use of a firearm allegation and found true the special

circumstance allegation of multiple murders. The court sentenced him to two concurrent terms of life without possibility of parole.

In the published portion of this opinion, we reject defendant's contention the jury was improperly instructed about the doctrine of transferred intent. In the nonpublished portion of the opinion, we find no merit to the defense contention the judge improperly attempted to question a witness. We agree with defendant's claim of two minor sentencing errors, each of which the Attorney General concedes. We therefore will direct preparation of a modified abstract of judgment to correct those two errors but otherwise affirm the judgment.

### STATEMENT OF FACTS

When viewed in the light most favorable to the judgment,[1] the operative facts can be simply stated. Defendant and Solo Sagato (one of the murder victims) were members of the 18th Street gang. Sagato functioned as a "rent collector" for the gang, taking money from nongang members who sold drugs within the gang's territory. Sagato apparently made some mistakes in this function. Consequently, a gang leader ordered defendant to kill Sagato.

During the afternoon of November 10, 1993, Edgar Chavez, also a member of the 18th Street gang, drove defendant to the corner of 11th Street and Westlake Avenue where Sagato was walking with his girlfriend Mary Granados (the second murder victim). Granados was 26 weeks pregnant. Defendant was wearing a hat and a bandana over the lower part of his face. He left the car, approached Sagato and Granados from behind, and fired at least seven shots, first at Sagato and then at Granados. Defendant returned to Chavez's car and left the area.

Five individuals witnessed the attack and at trial identified defendant as the shooter. Although many of the witnesses identified defendant as the shooter to the police shortly after the crimes occurred, fear of the 18th Street gang intimidated them from any further cooperation with law enforcement. Consequently, the first case was dismissed in 1995 when the eyewitnesses could not be found. The present information was not filed until 2000, and trial was conducted in 2002.

In addition to the eyewitnesses' testimony, defendant was implicated by an informant. The informant testified defendant told him in 1997 about the murders in detail, including the fact he (defendant) intentionally shot Granados after first killing Sagato.

---

[1]See, e.g., *People v. Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].

Defendant did not testify and presented no affirmative evidence in his defense.

Defendant's theory of the case, as set forth in counsel's closing argument, was that he had been misidentified and/or was the victim of a police conspiracy.

Before deliberations, the trial court granted the defense motion to acquit on the charge of first degree murder of the fetus based upon its conclusion the People had failed to prove the fetus was viable. (Pen. Code, § 1118.1.) (See fn. 4, *post.*) The jury convicted defendant of the first degree murders of Sagato and Granados, found true the special circumstance allegation of multiple murders, and found defendant had personally used a firearm. The trial court sentenced him to concurrent terms of life without the possibility of parole.

DISCUSSION

A. *Instruction on Transferred Intent*

*Introduction*

Without any objection from defendant, CALJIC No. 8.65 ("Transferred Intent") was submitted to the jury.[2] It read: "When one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed."

◼ Defendant now contends: "In light of the law of transferred intent that was applicable at the time of the crimes (as required by the ex post facto and due process clauses of the Federal and California Constitutions), the trial court committed prejudicial error . . . in instructing that the jury was allowed to find transferred intent." In particular, he argues the instruction improperly permitted the jury to convict him of the first degree murder of Granados by applying transferred intent to what he now claims could have been an accidental shooting of Granados.

---

[2]Counsel for the parties first discussed jury instructions in an unreported conference. During a subsequent reported proceeding, defense counsel requested several special instructions. The issue of transferred intent arose in the context of discussing the then pending murder charge based upon the death of Granados's fetus. The court said: "You also have a transfer of intent issue, and I think your theory for the fetus is transferred intent, but we'll leave that out, and you folks can spend some time researching that." This particular issue, however, soon became moot because the trial court granted a motion to acquit (Pen. Code, § 1118.1) on this charge based on its finding the People had produced insufficient evidence to establish the fetus was viable. In a later discussion, defense counsel objected to the use of several instructions but made no objection to the use of CALJIC No. 8.65.

The premise of defendant's contention is that when he committed the murders in 1993, the law did *not* permit the doctrine of transferred intent to be applied when two victims were murdered, one intentionally (Sagato) and one accidentally (Granados). Defendant claims it was not until the California Supreme Court rendered its opinion in *People v. Bland* (2002) 28 Cal.4th 313 [121 Cal.Rptr.2d 546, 48 P.3d 1107] (*Bland*), nine years after he had committed the crimes, that the law embraced such a concept. He therefore urges the instruction submitted to the jury improperly retroactively applied *Bland*'s holding to him.

As we shall explain, defendant's underlying premise is incorrect. When he committed the murders, the Courts of Appeal were in conflict whether transferred intent applied when two victims were killed, a point then noted by an authoritative treatise. At the time of trial, decisional law was still in conflict and nothing in the Use Note to CALJIC No. 8.65 suggested the instruction could not be used in this situation. Consequently, we reject defendant's claim that the trial court's use of the instruction was in derogation of controlling law and therefore improper. Defendant further errs in implicitly suggesting the instruction submitted at this trial was based upon *Bland*. That is simply impossible: *Bland* was not decided until several months *after* defendant's trial had concluded. Lastly, we conclude that given the evidence defendant intended to murder Granados and the parties' closing arguments, any possible error was harmless beyond a reasonable doubt.

*Legal Background*

In order to place defendant's contention in proper context, we must trace the development of case law interpreting the common law doctrine of transferred intent as it is potentially raised by this case: the defendant intends to kill victim A (Sagato), does kill victim A, and in the course of so doing also inadvertently kills victim B (Granados).

In *People v. Carlson* (1974) 37 Cal.App.3d 349 [112 Cal.Rptr. 321], the defendant was charged with the murders of his wife and her unborn child. The trial court convicted him of voluntary manslaughter for the death of his wife and, on the basis of the felony-murder rule, second degree murder for the death of the fetus. (*Id.* at p. 351.) The Court of Appeal discussed whether the doctrine of transferred intent could apply to the murder of the fetus. After reviewing a series of cases, it wrote: "Under the rationale of the cases cited there can be no doubt that the doctrine of 'transferred intent' applies even though the original object of the assault [the defendant's wife] is killed as well as the person [the fetus] whose death was the accidental or the unintended result of the intent to kill the former. As observed in [*People v.*

*Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847]], each victim of the attack is to be viewed individually and without regard to which [victim] in fact died. [Citation.]" (*Id.* at p. 357.) The Court of Appeal therefore concluded the doctrine of transferred intent would apply to transfer the defendant's intent to kill his wife to the death of the fetus so that "the criminality of [his] act toward the fetus would be the same as that directed to his wife," e.g., he would "be guilty of the voluntary manslaughter of the fetus." However, the appellate court ultimately did not apply transferred intent to the case "because of the peculiar anomaly in the statutory law [that] there cannot be a manslaughter of a fetus." (*Ibid.*)

In *People v. Birreuta* (1984) 162 Cal.App.3d 454 [208 Cal.Rptr. 635] (*Birreuta)*, a jury convicted the defendant of two first degree murders. He had confessed to killing one victim but claimed he shot the other victim by accident. (*Id.* at p. 458.) The jury was instructed with CALJIC No. 8.65 which then provided, as it did during defendant's trial: " 'Where one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed.' " (*Birreuta,* at p. 458, fn. 3.) The Court of Appeal held the instruction was improperly submitted. It reasoned the transferred intent doctrine did not apply when the intended target was killed. That is, the appellate court believed the doctrine applicable only if: (1) the intended victim was not killed; and (2) an unintended victim was killed. (*Id.* at pp. 460-461.) The *Birreuta* court recognized its holding was contrary to *People v. Carlson, supra,* 37 Cal.App.3d 349, 357, a decision it characterized as "dicta, unsupported by any real analysis." (*Birreuta, supra,* 162 Cal.App.3d at p. 458.) The *Birreuta* court also acknowledged it was unclear how our state Supreme Court's then most recent discussion of transferred intent in *People v. Sears, supra,* 2 Cal.3d 180, would apply to this precise issue. (*Birreuta, supra,* at pp. 458-459.) The Attorney General did not petition the California Supreme Court for a hearing in *Birreuta.*

*People v. Calderon* (1991) 232 Cal.App.3d 930 [283 Cal.Rptr. 833] applied *Birreuta*'s reasoning to a situation in which the defendant unsuccessfully attempted to kill A and in the course of that attempted murder injured B. The appellate court held that the doctrine of transferred intent did not apply to B. (*Id.* at pp. 935-937.)

After *Birreuta* and *Calderon* were decided, the Use Note to CALJIC No. 8.65 was modified to read: "This instruction should not be given in a case where the evidence establishes that defendant intended to kill A, actually killed A as intended, but accidentally also killed B. Defendant has a

right to have jury instructed that the killing of B is only second degree murder or manslaughter. The doctrine of transferred intent does not apply because public policy is satisfied when defendant is convicted of first degree murder for killing A. (*People* v. *Birreuta* [, *supra*,] 162 Cal.App.3d 454, 458-463 . . . .) [¶] In *People* v. *Calderon* [, *supra*,] 232 Cal.App.3d 930 . . . , the court found a similar factual scenario present, except that no victim died, and applied the same policy and concluded transferred intent did not properly apply." (Use Note to CALJIC No. 8.65 (6th ed. 1996) p. 444.)

In 1993 when defendant committed the murders, one authoritative treatise explained: "The cases are in conflict on whether the doctrine of transferred intent applies when both the *intended* victim and an *unintended* victim are killed." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crimes, § 108, p. 128.) The treatise discussed *People* v. *Carlson, supra,* 37 Cal.App.3d 349, and *Birreuta, supra,* 162 Cal.App.3d 454.

In *People* v. *Scott* (1996) 14 Cal.4th 544 [59 Cal.Rptr.2d 178, 927 P.2d 288], our Supreme Court addressed the issue of "whether the doctrine of transferred intent may be used to assign criminal liability to a defendant who kills an unintended victim when the defendant is also prosecuted for the attempted murder of an intended victim." (*Id.* at p. 546.) The defendant, relying upon *Birreuta* and *Calderon,* urged transferred intent should not apply in this circumstance. (*Id.* at pp. 551-552.) The court rejected the argument. It concluded that "[c]onsistent with a line of [California] decisions beginning . . . nearly a century ago," the doctrine of transferred intent applied to the death of the unintended victim. (*Id.* at p. 546.) In the course of reviewing pertinent decisions from the Courts of Appeal, the court observed "reliance on the doctrine [of transferred intent] to assign criminal liability has led to mixed results." (*Id.* at p. 552.) In particular, the court noted *Birreuta*'s holding was at odds with other appellate decisions. The court declined to resolve that conflict. It wrote: "Because the facts of the case presented here do not involve the fatal shooting of both an intended and unintended victim, we have no occasion to determine whether *Birreuta*'s reasoning or its conclusion is correct, and we decline to express a view on that decision." (*Ibid.*)

After *People* v. *Scott,* 14 Cal.4th 544, was decided, the Use Note to CALJIC No. 8.65 was significantly modified to read: "In *People* v. *Scott* [, *supra*,] 14 Cal.4th 544, 550 . . . , the Court held that a defendant who with intent to kill, shot at one victim, but by accident missed that victim and killed another person, can be convicted of attempted murder of the intended victim, and murder of the deceased on the basis of transferred intent. Please disregard the references in the Use Note to *People* v. *Calderon* [, *supra*,] 232

Cal.App.3d 930 . . . . In *Scott,* the Court declined to comment on the validity of *People* v. *Birreuta* [, *supra,*] 162 Cal.App.3d 454 . . . where both the intended and unintended victims were killed, and it was held by the Court of Appeal that transferred intent could not be applied as to the death of the unintended victim. *(People* v. *Scott,* supra, 14 Cal.4th at p. 552.)" (Use Note to CALJIC No. 8.65 (2002 supp.) p. 133.) This is how the Use Note read at the time of defendant's trial, April and May 2002.

In addition, at the time of defendant's trial, the third edition of California Criminal Law reiterated there were conflicting decisions as to whether the doctrine of transferred intent applied when both the intended victim and an unintended victim were killed. (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 14, pp. 217-218.)

Several months *after defendant's trial had concluded,* our Supreme Court expressly disapproved *Birreuta* in *Bland, supra,* 28 Cal.4th 313. *Bland* reached a contrary conclusion: The transferred intent doctrine applies to an unintended homicide victim even when the intended victim is also killed. (*Id.* at pp. 317 & 321-326.)

*Discussion*

As already noted, the implicit assumption of defendant's contention—an assumption with which the Attorney General surprisingly does not take issue—is that CALJIC No. 8.65 was submitted to the jury because of the *Bland* decision.[3] As explained above, that assumption is simply incorrect. *Bland* was not decided until after trial had concluded. Therefore, defendant errs to the extent he frames his contention that CALJIC No. 8.65 was improperly used in the rubric that "*Bland* should not be applied retroactively because it constitutes an unforeseeable judicial enlargement of a crime." That is, because *Bland* was *not* the reason CALJIC No. 8.65 was submitted to the jury, the issue is *not* whether *Bland* can be retroactively applied to defendant's trial.

Defendant also errs to the extent he urges "this case is . . . governed by the *Birreuta* rule." As the above detailed chronology demonstrates, when the murders were committed (1993) there was a conflict in the law about transferred intent. *People* v. *Carlson, supra,* 37 Cal.App.3d 349, and *Birreuta, supra,* 162 Cal.App.3d 454, had reached contrary conclusions on the issue. This conflict in the law was acknowledged at that time by the well-known treatise, Witkin and Epstein, California Criminal Law, *supra.*

---

[3]Neither defendant nor the Attorney General has offered an explicit explanation for the use in this case of CALJIC No. 8.65.

Consequently, even were we to accept for argument's sake defendant's claim that the decisional law about transferred intent in effect at the time the crimes were committed controls how the jury should be instructed in 2002, we would reject his contention. In 1993, there were contrary views of the law. If at the time of trial *before Bland was decided* defendant believed *Birreuta* represented the better approach, he should have made that argument to the trial judge in objecting to the submission of CALJIC No. 8.65. He did not. While defense counsel did argue the 1993 law governed the resolution of other issues,[4] no argument in that vein was presented to the trial court. Had the parties or the court consulted the Use Note to CALJIC No. 8.65 at the time of trial, they would have found nothing to indicate use of the instruction was improper in this fact pattern. The earlier admonition to that effect had been withdrawn after our Supreme Court's decision in *People v. Scott, supra,* 14 Cal.4th 544, cast some doubt about the viability of *Birreuta's* analysis. In sum, defendant's claim "that the instruction the court did provide constituted an erroneous statement of law" is meritless.

In any event, the submission of the instruction could not have prejudiced defendant. The prosecutor's theory set forth in closing argument, a theory amply supported by the evidence, was that defendant intentionally shot both Sagato and Granados. The prosecutor made only passing reference to CALJIC No. 8.65 and immediately qualified it with the statement that the evidence did not support any claim Granados was accidentally shot.[5] The defense presented no evidence defendant had shot Granados by accident and defense counsel's closing argument made no reference to CALJIC No. 8.65.

---

[4]For instance, in arguing the Penal Code section 1118.1 motion to acquit on the charge of murder of the fetus, defense counsel argued the 1993 definition of viability should govern the trial court's analysis. The trial court agreed.

In regard to the standard instruction about reasonable doubt, defense counsel urged the version in effect in 1993 should be submitted. The trial court disagreed.

[5]After explaining at great length why the evidence supported verdicts of first degree murder for both victims, he said: "Now, as I've argued to you, Ladies and Gentlemen, this is a first degree murder conviction as to both victims, and there is also a principle of law that the court will read to you that also applies and may help clear up any questions you may have later on if you were to argue this issue, and that is the concept of what is called transferred intent. It means that when one person attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed had been killed. So that means, Ladies and Gentlemen, and I've already indicated to you the evidence [establishing first degree murder to both victims is credible], but *if for some reason you find or believe that maybe the defendant just wanted to kill one victim and not the other, which I think the evidence is the exact contrary,* but even if you were to find or think that he intended—you know, he planned to kill Solo Sagato, and in the process wound up killing his wife, too, it's still first degree murder under the transferred intent doctrine. In other words, when it's a willful, deliberate, premeditated murder of one person, but another person is killed, too, then it can be first degree murder." (Italics added.) The prosecutor then proceeded to review again the evidence which showed defendant intentionally killed Granados.

The defense theory was that defendant had been misidentified and/or was the victim of a police conspiracy. Defense counsel never suggested, let alone argued, defendant had inadvertently shot Granados. Consequently, even under the *Chapman* standard, the standard most deferential to a criminal appellant's claim of error, any error in the submission of CALJIC No. 8.65 was harmless beyond a reasonable doubt.[6] (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].)

B., C.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

The trial court is directed to prepare and forward to the Department of Corrections a modified abstract of judgment reflecting: (1) an award of 394 days of presentence conduct credit; and (2) deletion of the $10,000 parole revocation fine imposed pursuant to Penal Code section 1202.45. As so modified, the judgment is affirmed.

Epstein, J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 11, 2003.

---

[6]Defendant alternatively argues: "[W]here an erroneous instruction invites the jury to convict the defendant on an erroneous legal theory, reversal is required 'absent a basis in the record to find that the verdict was actually based on a valid ground.' [Citations.]" That approach is inapplicable to this case because, as explained above, the instruction did *not* embody an erroneous legal theory. Instead, it represented one of two divergent views on the law of transferred intent, a view ultimately approved by the California Supreme Court.

*See footnote, *ante*, page 328.