Filed 12/20/13  P. v. Leos CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057148 |
| v. | (Super.Ct.No. RIF154686) |
| ALEXANDER LEOS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jean P. Leonard, Judge.

Affirmed with directions.

Kenneth H. Nordin, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, and Christine

Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

On retrial following a hung jury, defendant Alexander Leos was convicted of one

count of possessing methamphetamine for sale (Health & Saf. Code, § 11378) and

1

acquitted of one count of active participation in a criminal street gang. (Pen. Code, § 186.22, subd. (a).) The court made true findings as to a prison prior (Pen. Code, § 667.5, subd. (b)), and a Strike prior (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), and sentenced him to prison for three years eight months. Defendant appealed.

On appeal, defendant claims (1) the court violated his due process rights by denying his motion to bifurcate the gang crime from the drug crime, and (2) the court erred in denying defendant's pretrial motion to dismiss (§ 995) the gang crime in light of the subsequent decision of *People v. Rodriguez* (2012) 55 Cal.4th 1125. We direct the clerk of the superior court to amend the abstract of judgment but otherwise affirm.

BACKGROUND[1]

On December 11, 2009, the Riverside Sheriff's Office's community action team conducted a special operation along with the gang deputies in which they executed search warrants, probation compliance checks and parole compliance checks. On that date, Deputy Tometich, along with then Deputy Wilson, a member of the gang intelligence unit of the Banning Correctional Facility, targeted certain West Side Riva gang members in the area and conducted parole compliance checks. Defendant was one such target, having been convicted in 2007 of felony vandalism committed for the benefit of a street gang, so several deputies went to defendant's address for a parole compliance check.

---

[1] Because defendant was acquitted of count 2, charging that he was an active participant in a criminal street gang, we do not need to provide a detailed discussion of the gang evidence. We include only the evidence relating to his conviction and will provide additional information in the discussion section as needed.

2

At approximately 8:30 a.m. the members of the joint operation arrived at the residence where the defendant lived. Deputy Wilson contacted the defendant as he was walking out of a rear bedroom and escorted him to the living room. Deputy Tometich conducted a search of defendant's bedroom and found two scales. In one scale Deputy Tometich found a baggie containing 2.2 grams of suspected methamphetamine; in the box containing the second scale, he found 17 small plastic baggies.[2] On some shelves in the room, he saw approximately 10 sports team hats, one of which a "W" on it. Wilson escorted defendant away from other family members and asked if he was selling drugs. Defendant replied, "I sell to stupid people who have nothing better to do with their money than buy dope."

In the opinion of Detective Lackey, a narcotics detective with the Riverside Police Department, the quantity of the methamphetamine, the presence of the two scales and the packaging materials indicated the drugs were possessed for the purpose of sale. The absence of symptoms of use, or paraphernalia for personal ingestion of the drug contributed to his opinion. In the detective's opinion, few methamphetamine users snort meth because one does not get as much of a high as one would get from smoking it.

Defendant was charged with possession for sale of methamphetamine (count 1, Health & Saf. Code, § 11378) and active participation in a criminal street gang. (Count 2, Pen. Code, § 186.22, subd. (a).) It was further alleged that he had suffered a prior conviction for which he had served a prison term (prison prior), within the meaning of

---

[2] Laboratory testing confirmed the presence of methamphetamine, although the weight of the drug was 1.83 grams after field testing had been performed.

3

Penal Code section 667.5, subdivision (b), and that he had been previously convicted of a violent or serious felony within the meaning of the Strikes law. (Pen. Code, §§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1).)

Defendant's first jury trial ended in a mistrial resulting from a hung jury. Prior to proceedings in connection with the retrial, defendant filed a motion requesting the court to exercise its discretion pursuant to Penal Code section 1385 to dismiss count 2, the charge of active participation in a criminal street gang. That request was denied.

Defendant was retried before a jury. During trial, defendant testified in his own defense. He admitted the methamphetamine and the scales belonged to him but denied that he ever sold methamphetamine. He also denied making the statement attributed to him about selling drugs to stupid people.

On July 31, 2012, the jury convicted defendant of count 1, possession for sale of methamphetamine, and acquitted him of count 2, the gang count. On August 3, 2012, in a separate court trial on the allegations relating to the prior convictions, the court found the prison prior and Strike allegations true.

On September 14, 2012, the court denied defendant's motion to dismiss the Strike prior in the interest of justice. (Pen. Code, § 1385.) That same day the court sentenced defendant to the low term of two years eight months for count 1 (16 months doubled due to the Strike), with a consecutive term of one year for the prison prior, for a total of three

years eight months in prison.[3]  Defendant appealed.

DISCUSSION

1.    **Denial of Defendant's Severance Motion Did Not Prejudice His Right to a Fair Trial.**

During in limine proceedings prior to the second trial, defendant made a motion to "bifurcate"[4] count 1, the possession for sale of methamphetamine, from the trial of count 2, active participation in a criminal street gang.  The trial court denied the motion.  On appeal, defendant argues that the denial of the motion rendered his trial fundamentally unfair under both the state and federal Constitutions.  We disagree.

Pursuant to Penal Code section 954, the People are permitted to join counts if they arose out of a single course of conduct or were connected in their commission.  Defendant does not argue that the two counts are of different classes of crime.  A party seeking severance is required to clearly establish that there is substantial danger of prejudice requiring that the charges be separately tried.  (*People v. Hernandez, supra,* 33 Cal.4th at p. 1050; *People v. Bean* (1988) 46 Cal.3d 919, 938.)  On appeal, an order denying a motion to sever counts is reviewed for abuse of discretion.  (*People v. Jones* (2013) 57 Cal.4th 899, 925, citing *People v. Vines* (2011) 51 Cal.4th 830, 855.)

---

**3**  The abstract of judgment fails to indicate that the sentence was imposed pursuant to the Strikes law.

**4**  Severance, not bifurcation, is the proper term for disengaging substantive counts for separate trials.  (See *People v. Burnell* (2005) 132 Cal.App.4th 938, 946, fn. 5.)  A gang *enhancement* alleged pursuant to Penal Code section 186.22, subdivision (b), may be bifurcated.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049, citing *People v. Calderon* (1994) 9 Cal.4th 69.)

5

Joint trials have long been prescribed—and broadly allowed—by the Legislature's enactment of Penal Code section 954. (*People v. Soper* (2009) 45 Cal.4th 759, 771.) The purpose underlying this statute is clear: a joint trial "ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials." (*Frank v. Superior Court* (1989) 48 Cal.3d 632, 639.) A unitary trial requires a single courtroom, judge, and court attachés. Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried. (*People v. Bean, supra,* 46 Cal.3d at p. 940.)

In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process, promoting judicial efficiency. (*People v. Bean, supra*, 46 Cal.3d at pp. 939-940; see also, e.g., *People v. Geier* (2007) 41 Cal.4th 555, 578; *People v. Ochoa* (1998) 19 Cal.4th 353, 409; *People v. Mason* (1991) 52 Cal.3d 909, 935.) For these and related reasons, consolidation or joinder of charged offenses is the course of action preferred by the law. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220.) The gang evidence was cross-admissible with drug crime.

In determining whether a trial court abused its discretion in denying a motion to sever properly joined charges, we consider the record before the court when it made its ruling. (*People v. Soper, supra,* 45 Cal.4th at p. 774, quoting *Alcala v. Superior Court, supra,* 43 Cal.4th at p. 1220.) We first consider whether the evidence of the separate offenses would have been cross-admissible if the offenses had been separately tried.

6

(*People v. Thomas* (2012) 53 Cal.4th 771, 798.)

Here, the evidence was cross-admissible if the two counts had been separately tried. The prosecution presented evidence that West Side Riva engaged in drug sales as one of its primary activities. The gang expert relied upon the quantity of methamphetamine found during the parole search, and the presence of scales and packaging materials, to support his opinion that defendant possessed the drugs with intent to sell. The same evidence would have been offered in a separate trial on the gang count to show the nature of the "felonious criminal conduct" which defendant was alleged to have willfully promoted, furthered or assisted, within the meaning of Penal Code section 186.22, subdivision (a).

Next we consider whether some of the charges are unusually likely to inflame the jury against defendant. Defendant argues that the "sheer volume of inflammatory gang evidence" was sufficient to prejudice defendant's right to a fair trial and the content of the gang evidence was particularly inflammatory because it included references to the "Mexican Mafia" as well as "West Side Riva" and defendant's tattoos. The record does not support defendant's assertions. The only reference to the "Mexican Mafia" in this case was an explanation of the number "13" which was tattooed on defendant's arm while he was imprisoned. The gang expert explained that "13" referred to the 13th letter of the alphabet, "M," which stood for Mexican Mafia. He also testified how prison inmates earn that tattoo. There were no further references and no gratuitous testimony about irrelevant gang crimes or activities, as was the case in *People v. Albarran* (2007) 149 Cal.App.4th 214, on which defendant so heavily relies.

7

Defendant's reliance on the case of *People v. Albarran, supra,* 149 Cal.App.4th 214, is misplaced. That case involved a new trial motion where the trial court had found there was insufficient evidence to support the gang enhancement, but that some gang evidence was relevant to prove motive or intent for the substantive counts, which included attempted murder, shooting at an inhabited dwelling and attempted kidnapping for carjacking. On appeal, the reviewing court held that even if some gang evidence were relevant on these issues, the lower court erred in admitting other extremely inflammatory evidence—including references to the Mexican Mafia, threats to kill police officers, and descriptions of criminal activities by other gang members—that had no connection to the underlying charges. (*Id*. at pp. 226-228.)

In this case, the defendant seems to interpret the opinion in *Albarran* as requiring a finding that any reference to the "Mexican Mafia" is inherently inflammatory and prejudicial. However, nowhere in that decision did the court hold, as a matter of law, that the mention of "Mexican Mafia" is so inflammatory as to violate a defendant's due process rights. To the contrary, that same court reasoned that "as [a] general rule, evidence of gang membership and activity is admissible if it is logically relevant to some material issue in the case, other than character evidence, is not more prejudicial than probative and is not cumulative." (*People v. Albarran, supra,* 149 Cal.App.4th at p. 223.) The gang evidence deemed irrelevant in *Albarron* was gratuitous evidence which went beyond proof of the defendant's gang involvement or gang motive, and had no bearing on the underlying charges.

Here, the evidence was limited to and probative of the contested issue in the case.

8

The sole mention of the number "13" or the Mexican Mafia were necessary to explain the defendant's tattoos, which were cited by the prosecution as evidence in support of the charge. Although defendant complains of the quantity of the gang evidence vis-à-vis the number of pages of transcript, there is only a single reference to the Mexican Mafia in the entirety of the gang expert's testimony. Defendant acknowledges the gang expert's testimony was admitted to show defendant's gang ties. Such evidence is proper where a defendant is charged with active participation in a street gang. (*People v. Tran* (2011) 51 Cal.4th 1040, 1050.) The fact that this case included limited testimony relating to the Mexican Mafia, does not bring this case within the holding of *Albarron* and did not prejudice the defendant's right to a fair trial.

We also note that a mistrial was declared at the conclusion of the first trial in which both counts were tried together, with the jury deadlocked on both counts, and that the jury leaned in favor of acquitting on the gang count. In the second trial, the jury did acquit him of the count. Considering that defendant was acquitted of the gang count on retrial, he cannot demonstrate any prejudice from the "volume" of gang evidence.

Further, the record shows defendant obtained an in limine ruling precluding the gang expert from testifying about details of matters otherwise inadmissible, as well as gang profile evidence. Without further objection, testimony admitted to prove defendant's gang ties was relevant and proper. The gang evidence adduced in this trial could not have inflamed the jury on the drug count if it was insufficient to convince the jury that he was an active participant in a gang.

Defendant also argues that the gang evidence "buoyed" the prosecutor's case on

9

the drug count because it led the jury to believe defendant had a predisposition to engage in criminal conduct. Defendant is mistaken. The drug count did not require "buoying" where the drugs were found along with scales and packaging material, defendant admitted the drugs belonged to him, and admitted he sold drugs.[5]

Finally, it is difficult to accept the premise that the gang charge was relied upon to buoy the drug count where a mistrial was declared on both counts in the first trial, notwithstanding the joinder, while in the second trial defendant was acquitted of the gang count. Denial of the severance motion was a proper exercise of judicial discretion.

2.     **Any Issue Pertaining to the Denial of Defendant's Pretrial 995 Motion Is Moot, With Or Without Retroactive Application of *People v. Rodriguez*.**

On appeal, defendant complains that retroactive effect of *People v. Rodriguez, supra,* 55 Cal.4th 1125 makes the pretrial denial of his motion pursuant to Penal Code section 995 to dismiss count 2, the violation of section Penal Code section 186.22, subdivision (a), reversible error. We disagree.

The People correctly argue the issue became moot when the defendant was acquitted of the charge in count 2. (See *People v. Ham* (1970) 7 Cal.App.3d 768, 774, disapproved on another point in *People v. Compton* (1971) 6 Cal.3d 55, 60, fn. 3; *People v. Gomez* (2003) 107 Cal.App.4th 328, 331, fn. 2; see also *People v. Cloud* (1969) 1

---

[5] We acknowledge defendant testified he was not selling drugs, but the jury rejected his testimony in finding him guilty. We must discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity. (*People v. Moore* (2010) 187 Cal.App.4th 937, 940, citing *People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.)

Cal.App.3d 591, 597.) This is not an issue of broad public interest that is likely to recur or evade review (see *In re Kerry K.* (2006) 139 Cal.App.4th 1, 4; *In re Talbott* (1988) 206 Cal.App.3d 1290, 1292), so we do not need to reach the issue.

Even without the acquittal, the same conclusion would be necessary because a ruling on a 995 motion denial requires a showing of prejudice. (*People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529; *People v. Cabrera* (2007) 152 Cal.App.4th 695, 701.) Because defendant was acquitted on count 2, he cannot make a rational argument that he was prejudiced by the order holding him to answer that charge at the preliminary hearing stage, irrespective of the retroactive effect of the holding of *People v. Rodriguez, supra,* 55 Cal.4th 1125. Of course, if he had been convicted, he could have relied upon *Rodriguez* to support a reversal of the gang count. Having been acquitted, that issue is moot.

3. **The Abstract of Judgment Must be Amended**.

In reviewing the record, we have noted a clerical error in the abstract of judgment. Line 1 describes the sentence of two years eight months for count 1, or 32 months, which is double the low term for a conviction under Health and Safety Code section 11378. Line 4 includes boxes to be checked where the defendant is sentenced pursuant to Penal Code sections 667, subdivisions (b)-(i) or 1170.12, the Strikes law. However, the box on line 4 is not checked, so it fails to indicate that the sentence was imposed under the Strikes law. The abstract must be amended.

The abstract of judgment constitutes the commitment and is the order sending the defendant to prison, and the process and authority for carrying the judgment and sentence

11

into effect; no other warrant or authority is necessary to justify or require its execution. (Pen. Code, § 1213; *People v. Mitchell* (2001) 26 Cal.4th 181, 185, citing *In re Black* (1967) 66 Cal.2d 881, 890.) It goes without saying that accuracy is essential in a document that prescribes the execution of sentence and is provided to criminal investigation and identification. (§1213, subd. (a).)

This court has the authority to correct clerical errors at any time. (*People v. Mitchell, supra,* 26 Cal.4th at pp.186-187.) The clerk is directed to amend the abstract of judgment to reflect that the sentence was imposed under the Strikes law by checking the appropriate boxes on line 4.

## DISPOSITION

The trial court is directed to amend the abstract to include the fact that defendant was sentenced pursuant to Penal Code sections 667, subdivisions (b) through (i), or 1170.12 (two strikes). In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

12