[No. G008671. Fourth Dist., Div. Three. July 25, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY CALDERON, JR., Defendant and Appellant.

COUNSEL

Gary S. Gorczyca, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Rudolph Corona, Jr., Barry J.T. Carlton and Tim Nader, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SONENSHINE, Acting P. J.**—Danny Calderon, Jr., became involved in a quarrel with Hiep Bui and another man near the handball courts at Memorial Park in Santa Ana. Calderon retrieved a shotgun from his car and shot at Bui four times. He missed Bui, but hit seven-year-old Felix Angel, who was playing five feet away. Angel suffered a broken arm and a skull fracture. Although he denied it, Calderon was suspected to be a member of a street gang and Bui a member of a rival gang. Calderon maintained he was drunk at the time and was intending only to scare Bui.

Pursuant to a plea bargain, Calderon pleaded guilty to two counts of attempted murder and two counts of assault with a deadly weapon, admitting allegations he personally used a firearm and inflicted great bodily injury on Angel. The indicated sentence was 12 years. In exchange for the plea, the prosecution dismissed allegations the attempted murders were willful, deliberate, and premeditated. (Pen. Code, § 189.)

On the same day his plea was accepted, Calderon waived probation and asked for immediate sentencing. He received the middle term of seven years on count I (the attempted murder of Angel), three years for the great bodily injury enhancement, and two years for the weapon enhancement, both attached to that count. Sentences were not imposed on the remaining counts.

On appeal, Calderon asserts the plea must be set aside because he was not fully advised of the consequences and the court failed to obtain a proper factual basis for the plea. (Pen. Code, § 1192.5.) He also claims the court could not lawfully impose sentences for both the gun use and the great bodily injury enhancements.

I

■ Calderon first contends he was not apprised that his admission to the great bodily injury enhancement rendered him ineligible for probation. (Pen. Code, § 1203.075.) Because this constitutes a direct consequence of his plea, Calderon claims he should be allowed to withdraw it. (*People v. Caban* (1983) 148 Cal.App.3d 706, 711 [196 Cal.Rptr. 177].)

Calderon had been given an indicated sentence of 12 years as a part of his plea bargain. Before obtaining the appropriate waivers, the following exchange took place: "The Court: [T]he defendant will be pleading to a previously indicated sentence by Judge Brown; is that correct, gentlemen? [¶] [The Prosecutor]: That's correct. [¶] The Court: How do you aspect [*sic*]

to arrive at that sentence, gentlemen? [¶] [Defense Counsel]: To sentence on count I to the mid range, seven years, plus the three year enhancement for 12022.7 and two years for 12022.5. [¶] The Court: And with that indicated sentence the defendant wishes to enter a plea of guilty? [¶] [Defense Counsel]: That's correct. [¶] The Court: You do not wish to make application for probation or probation report? [¶] [Defense Counsel]: That's correct."

Prior to accepting the plea, the trial court said to Calderon: "You understand that the court has indicated that a sentence of 12 years in prison for a plea to counts I through IV is appropriate; do you understand that?" After Calderon responded affirmatively, the court continued: "That's what the court has indicated that you would receive; do you understand that?" Calderon said he did. After the plea was entered, the court inquired, "Does the defendant formally waive his right to apply for probation? [¶] The Defendant: Yes. [¶] The Court: Does he waive his right to have a probation report prepared sent with the packet to state prison? [¶] The Defendant: Yes." Calderon then requested immediate sentencing.

The portions of the record quoted above demonstrate there was an indicated sentence of 12 years negotiated with Judge Brown. After the matter was transferred to Judge Fitzgerald, he asked counsel to recite the agreement, which Calderon's counsel did in detail. Later, Judge Fitzgerald probed Calderon personally and advised him that the 12 years was "appropriate" and was what he "would receive" upon pleading guilty. In other words, it was not simply an indicated sentence; it *was* the sentence. Calderon said he understood. He then waived his right to apply for probation and was sentenced immediately.

Counsel and the defendant expressly agreed to the 12-year sentence then imposed and waived application for probation because they expected to receive that sentence. This was not a situation where the 12 years constituted a "lid" or maximum sentence agreed upon by the parties. Had that been the case, counsel presumably would have obtained a probation report and argued for something less than the maximum.

Advising Calderon that probation was prohibited would have been useless and absurd since the defendant agreed to a specified prison term. Even assuming the court had such a duty, the advisements satisfactorily establish Calderon waived any right to probation he may have thought he had. In other words, it is not reasonably probable the result would have been different. (*People* v. *Caban, supra,* 148 Cal.App.3d at p. 712.)

## II

■ Calderon contends the factual basis the court obtained from him was insufficient as a matter of law because it asked him only whether he

"attempted to kill Hiep Bui" but did not ask him if he did so with malice.[1] Calderon claims if the court had asked him to recount his version of the facts, he would have said that "while intoxicated he discharged a firearm in an attempt to dissuade an individual from engaging in a fight with a friend." These facts, he insists, would constitute a defense to attempted murder.

In *People* v. *Watts* (1977) 67 Cal.App.3d 173 [136 Cal.Rptr. 496], the court explained that a factual basis must be obtained in each case in order "to protect against the situation where the defendant, although he realizes what he has done, is not sufficiently skilled in law to recognize that his acts do not constitute the offense with which he is charged. [Citation.] Inquiry into the factual basis for the plea ensures that the defendant actually committed a crime at least as serious as the one to which he is willing to plead." (*Id.* at p. 178.)

However, the law "does not require the trial court to interrogate a defendant personally in an element by element manner about the factual basis for his guilty plea. . . . He may, in fact, enter a plea of guilty even though he protests his innocence. [Citation.]" (67 Cal.App.3d at p. 180.) Nothing in *Watts* requires more than the establishment of a prima facie factual basis for the charges. The court here ascertained Calderon intended to kill Bui. Malice is presumed where the intent to kill is present, in the absence of an affirmative defense. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 325 [185 Cal.Rptr. 436, 650 P.2d 311].) Calderon's statement he intentionally tried to kill someone constituted an adequate factual basis for attempted murder. The court was not also required to determine there was no defense to the charge. That was a matter between the defendant and his counsel.

## III

There is, however, a defect in the plea. The factual basis for Calderon's guilt of the crimes committed against Angel was premised on the doctrine of transferred intent, i.e., that Calderon intended to kill Bui but injured Angel instead. ▮ We asked the parties to submit supplemental briefs on the issue; both concluded transferred intent is inapplicable as a means of assigning liability for attempted murder. We agree.

The transferred intent doctrine is a legal fiction established to attribute liability to a defendant who, intending to kill one person, mistakenly kills another instead. (*People* v. *Suesser* (1904) 142 Cal. 354, 367 [75 P. 1093].) The purpose of the rule is "to insure the adequate punishment of those who

---

[1]The entire factual basis, under the court's inquiry, was as follows: "That on March 14, 1989 in Orange County you attempted to kill Hiep Bui with a firearm and that you shot Felix Angel, inflicting great bodily injuries while attempting to shoot Mr. Bui? Is that true?"

accidentally kill innocent bystanders, while failing to kill their intended victims. . . . The transferred intent doctrine is born of the sound judicial intuition that such a defendant is no less culpable than a murderer whose aim is good." (*People* v. *Birreuta* (1984) 162 Cal.App.3d 454, 460 [208 Cal.Rptr. 635].)

Where *both* the intended and unintended victim are killed, one court has held the transferred intent rule is inapplicable because this purpose would not be served. That is, because the defendant could be directly prosecuted for killing the intended victim and separately charged for killing the unintended victim in accordance with his or her level of culpability, the rule is unnecessary. (162 Cal.App.3d at p. 460; contra, *People* v. *Carlson* (1974) 37 Cal.App.3d 349 [112 Cal.Rptr. 321].) "There is no danger that a premeditated killing will go unpunished or be treated as a manslaughter because the murder of the intended victim will presumably be the subject of prosecution." (*People* v. *Birreuta, supra*, 162 Cal.App.3d at p. 460.)

In *People* v. *Czahara* (1988) 203 Cal.App.3d 1468 [250 Cal.Rptr. 836], the court agreed with this analysis in a case involving nonfatal injuries to both the intended and unintended victims. Czahara was charged with two counts each of attempted murder and assault with a deadly weapon for shooting at a car in which his former girlfriend and her new paramour were sitting. The court found the reasoning in *Birreuta* to be persuasive: "[T]here is a difference in culpability between an assailant who deliberately sets out to kill one person and in addition kills another accidentally, and one who deliberately kills two victims. Application of the transferred intent rule to the former would wipe out that distinction. Similarly, the attacker who shoots at two or more victims, with the intent of killing all, is more culpable than the one who aims at a single individual, even when the latter also injures a bystander. In the circumstances of this case, the transferred intent instruction obscured that difference." (*Id.* at p. 1474.) Thus, if transferred intent is not employed, culpability is determined in accordance with the defendant's actual intent toward each victim.

Here, although only the unintended victim, Angel, was injured, Calderon unmistakably attempted to kill his intended victim, Bui. The crime of attempted murder may be committed whether or not the intended victim is actually injured. Calderon therefore committed a completed crime against his intended victim which is as serious as the greatest level of culpability which could be achieved by transferring that intent to his unintended victim, obviating the need to apply the doctrine. That would not be true if Angel had been killed, whereupon his intent to kill Bui would be transferred to achieve Calderon's true culpability—for murder. He would, of course, also be held responsible for the attempted murder of Bui.

As one scholarly treatise explains it: "If, without justification, excuse or mitigation D with intent to kill A fires a shot which misses A but unexpectedly inflicts a non-fatal injury upon B, D is guilty of an attempt to commit murder,—but the attempt was to murder A whom D was trying to kill and not B who was hit quite accidentally. And so far as the criminal law is concerned there is no transfer of this intent from one to the other so as to make D guilty of an attempt to murder B." (Perkins & Boyce, Criminal Law (1982) § 8, p. 925.)

But Calderon was punished in the same manner as he would have been had he actually intended to kill both victims. As pointed out in *Czahara*, use of the transferred intent doctrine under these circumstances obscures this difference. (*People v. Czahara, supra,* 203 Cal.App.3d at p. 1474.) Thus, the better rule is that "where a single act is alleged to be an attempt on two persons' lives, the intent to kill should be evaluated independently as to each victim, and the jury should not be instructed to transfer intent from one to another." (*Id.* at p. 1475.)

Calderon remains accountable for the shooting of Angel "according to the culpability which the law assigns it, but no more." (203 Cal.App.3d at p. 1475) There is a sufficient factual basis for the assault with a deadly weapon conviction as to both Angel and Bui. The charge requires only "the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another." (*People v. Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].) It is "the intent to attempt to commit a battery." (*Ibid.*) We cannot, and need not, determine whether there is sufficient evidence to support this count; Calderon pleaded guilty and the factual basis is sufficient to uphold the validity of that plea. His one act of shooting constitutes the crime of assault with a firearm upon both victims.

The great bodily injury enhancement must face a similar analysis. As the court recognized in *Czahara*, without application of transferred intent, it must stand or fall on its own merits. Penal Code section 12022.7 states, in pertinent part: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person . . . in the commission or attempted commission of a felony" shall suffer additional punishment. It requires merely that the actor intend to inflict the great bodily injury "on any person" and personally inflict "such injury." The intent required is that the actor inflict *such injury* as is actually inflicted. (*People v. Santos* (1990) 222 Cal.App.3d 723, 744 [271 Cal.Rptr. 811].) There is no requirement the actor inflict the injury on the particular person he or she intends to injure.

Here, Calderon admitted he intended to inflict great bodily injury and personally did so during an assault with a firearm. It is of no moment that he intended to inflict it on a different person.

It remains to be determined whether the error requires setting aside the plea. As we have seen, only the conviction for the attempted murder of Angel, charged as count I, is defective. However, the entire sentence was imposed on that count, necessitating at a minimum a remand for resentencing.

■ Calderon seeks to have his plea set aside. We agree with the Attorney General that setting aside the entire plea would be inappropriate where, as here, the essence of the plea agreement may still be retained. Calderon admitted he attempted to kill Bui, shooting Angel instead. Setting aside the attempted murder conviction on that count alone would conform the pleas to those charges for which there is a factual basis. Calderon benefits from one less conviction, while still receiving the benefit of his bargained-for sentence. The People can still obtain the 12 years for which they bargained, despite the fact they have been deprived of a conviction on count I. By agreeing to enforcement of the plea agreement, the People are also giving up their right to reinstate the allegation that the attempt was willful, deliberate and premeditated.

"To the extent that any action will undo the harm in this type of case, specific enforcement is the most effective method of meeting the goal of providing a remedy." (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 864 [187 Cal.Rptr. 441, 654 P.2d 211].) "This is a unique case, and when the totality of circumstances is considered, it requires a unique solution." (*People* v. *Newton* (1974) 42 Cal.App.3d 292, 298 [116 Cal.Rptr. 690].) On remand, the sentencing court would be free to use the remaining convictions in a manner which would effectuate the intent of the parties.[2]

## IV

Calderon contends it was improper for the court to impose sentence enhancements for both gun use (Pen. Code, § 12022.5) and great bodily injury (Pen. Code, § 12022.7). Because we are setting aside the count on which these enhancements were imposed and remanding for resentencing, this argument is technically moot. However, we consider it for the guidance of the lower court on resentencing and in the interest of judicial economy.

---

[2]The Attorney General suggests the middle term of seven years for the attempted murder of Bui, the middle term of three years for the assault with a deadly weapon on Angel, and two years for the use of a firearm, for a total of twelve years. We offer no opinion on the sentence structure, except to point out it may not exceed 12 years. (Pen. Code, § 1192.5.)

Penal Code section 1170.1, subdivision (e) provides that when two or more specified enhancements, such as the two here, may be imposed, "only the greatest enhancement shall apply." Calderon asserts the statute excepts multiple enhancements where murder is charged, but allows no similar exemption for attempted murder. The Attorney General agrees with this construction of the statute. We do not.[3]

We recite in pertinent detail this particular exercise in grammatical gymnastics foisted upon us by our Legislature: "When two or more enhancements under Sections . . . 12022.5 . . . 12022.7 . . . may be imposed for any single offense, only the greatest enhancement shall apply; however, in cases of lewd or lascivious acts upon or with a child under the age of 14 years accomplished by means of force or fear, as described in Section 288, kidnapping as defined in Section 207, penetration of a genital or anal opening by a foreign object, as defined in Section 289, oral copulation, sodomy, robbery, rape or burglary, *or attempted* lewd or lascivious acts upon or with a child under the age of 14 years, accomplished by means of force or fear, kidnapping, penetration of a genital or anal opening by a foreign object, oral copulation, sodomy, robbery, rape, murder, or burglary the court may impose both (1) one enhancement for weapons as provided in either Section 12022, 12022.4, or subdivision (a) of, or paragraph (2) of subdivision (b) of, Section 12022.5 and (2) one enhancement for great bodily injury as provided in either Section 12022.7 or 12022.9." (Pen. Code, § 1170.1, subd. (e), italics added.)

The question here turns upon whether the words "or attempted" conjoin only the phrase immediately following, i.e., "lewd or lascivious acts upon or with a child under the age of 14 years, accomplished by force or fear" or applies to the list of offenses which follow. We believe the latter is the only logical interpretation.

The first part of the statute recites a litany of offenses for which double enhancements may not be imposed. The second part repeats the same offenses, adding only murder to the list. There would be little reason for repeating this list if the phrase "or attempted" did not apply to all the offenses within it. Moreover, the addition of murder as one of the permissible attempt crimes is quite reasonable in light of the allowance for a second enhancement for great bodily injury. While such an enhancement rarely has a place in a murder prosecution, it quite often will in an attempted murder

---

[3]In his supplementary letter brief, the Attorney General purports to withdraw his concession on this issue. However, he does so on the basis that, under *People* v. *Jones* (1989) 210 Cal.App.3d 124 [258 Cal.Rptr. 294], a court may impose an enhancement otherwise prohibited if it is done pursuant to a plea bargain. But he repeats his concession of the ground upon which we decide the question.

prosecution. (*People* v. *Wells* (1983) 149 Cal.App.3d 497, 505 [195 Cal.Rptr. 608].)

However, the attempted murder charge has been set aside and Calderon may now be sentenced only on the remaining counts. As to those, only the assault with a deadly weapon charge is subject to both the firearm use and the great bodily injury enhancements, relating to Angel. And, that charge is not one of the enumerated exceptions under Penal Code section 1170.1. Therefore, on remand, only the greatest enhancement may be applied on that count.

The conviction for the attempted murder of Felix Angel is set aside and the matter remanded for resentencing on the remaining counts. In all other respects, the judgment is affirmed.

Crosby, J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 23, 1991.