{¶ 29} I concur with everything except for the majority's misinterpretation of the transferred-intent doctrine. *Page 9 
 {¶ 30} In case number B-0601265, Reese was convicted of one count of felonious assault, a second-degree felony, with three gun specifications, after two of the bullets he fired had penetrated Fiorini's vehicle. Reese argues that he did not knowingly cause or attempt to cause physical harm to Fiorini, and that the doctrine of transferred intent did not apply because he was defending himself. Although we have declined to rule that Reese acted in self-defense when he fired his gun at Ralston, Reese's arguments about the doctrine of transferred intent have merit.
 {¶ 31} The doctrine of transferred intent is a legal fiction that was established to impose liability on a defendant who, intending to kill one person, mistakenly kills another instead.[8] The purpose of the rule is "to insure the adequate punishment of those who accidentally kill innocent bystanders, while failing to kill their intended victims. * * * The transferred intent doctrine is born of the sound judicial intuition that such a defendant is no less culpable than a murderer whose aim is good."[9]
 {¶ 32} Simply put, the doctrine of transferred intent provides that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person, and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person.[10]
 {¶ 33} The origin of the doctrine of transferred intent has been traced to the medieval criminal law of England.[11] In The Queen v.Saunders Archer, defendant *Page 10 
John Saunders intended to poison his wife so he could marry another woman.[12] He placed poison in an apple and gave it to her. Sadly, she gave part of the apple to their young daughter, who ate it and died.[13] Saunders did not intend to kill his daughter, but he was nonetheless guilty of her murder.[14] The court "transferred" his intent to kill his wife to the death of his daughter.[15] The doctrine of transferred intent became part of the common law in many American jurisdictions and now exists in various forms in both criminal law and tort law.[16]
 {¶ 34} In the present case, Reese was convicted of felonious assault for knowingly attempting to cause physical harm to Fiorini. Reese did not intend to harm Fiorini or to damage his vehicle. Thus the issue was whether Reese should have been held criminally liable (with a felonious-assault conviction, rather than one for criminal damaging) for the damage caused to Fiorini's vehicle.
 {¶ 35} Although the Ohio Supreme Court has applied the doctrine of transferred intent when the defendant "intentionally acts to harm someone but ends up accidentally harming another,"[17] the court has not decided whether the doctrine of transferred intent should be used to impose criminal liability upon a defendant when the resulting harm or injury is not the same type of harm intended. For instance, if Reese had shot at Ralston, missed, and hit Fiorini, then the resulting harm (injury to person) would have been the same as the intended harm. But in this case, the resulting harm — damage to Fiorini's vehicle (injury to property) — was not the same as the intended harm (injury to person). *Page 11 
 {¶ 36} A review of the case law leads me to conclude that the doctrine of transferred intent applies only if the harm intended is the same as the resulting harm. In State v. Bryant, the South Carolina Supreme Court held that the doctrine of transferred intent "applies only in the situation of the same intended harm inflicted on an unintended victim."[18] In that case, the defendant slammed a police officer against a patrol car during a struggle while resisting arrest.[19] The defendant was convicted of resisting arrest and assault and battery, as well as malicious damage to personal property.[20] The court held that the intent to assault and batter the police officer could not be transferred to the property damage, since the harm caused was different that the type of harm intended.[21]
 {¶ 37} Similar to South Carolina, the state of Arizona has a transferred-intent statute that allows intent to be transferred from one victim to another if the resulting harm to the unintended victim is the same type of harm contemplated for the intended victim.[22]
 {¶ 38} The New York Court of Appeals has also held that the doctrine of transferred intent should not be used for attempt crimes.[23] The court reasoned that "because an attempt charge always involves an uncompleted crime, the transferred intent doctrine is ordinarily not implicated."[24] Although the New York court was deciding whether the transferred-intent doctrine codified under N.Y Penal Law 125.25(1) applied to attempted murder, I find its analysis to be persuasive. *Page 12 
 {¶ 39} And a number of jurisdictions have rejected the doctrine of transferred intent in relation to the crime of attempted murder of the unintended victim.[25] "As several of these cases reason, transferred intent is inapplicable where no death results and the defendant is charged with attempted murder of the intended victim, because the defendant committed a completed crime at the time he shot at the intended victim regardless of whether any injury resulted to the unintended victim."[26]
 {¶ 40} The rationale behind these decisions is the belief that the doctrine of transferred intent "should apply only when, without the doctrine, the defendant could not be convicted of the crime at issue because the mental and physical elements do not concur as to either the intended or actual victim."[27] The doctrine thus should not be employed to "multiply criminal liability, but to prevent a defendant who has committed all the elements of a crime (albeit not upon the same victim) from escaping responsibility for that crime."[28]
 {¶ 41} These cases are persuasive. The majority's analysis cites no cases to support its conclusion. Here, the doctrine was used to improperly multiply criminal liability. Reese was guilty of the felonious assault of Ralston, and of criminal damaging for the unintended, but also criminal, damaging of Fiorini's car.
 {¶ 42} Although Reese attempted to cause physical harm to Ralston, he did not intend to harm Fiorini. And while he committed two counts of felonious assault when he fired his gun and hit Ralston twice, the only harm suffered by Fiorini was damage to *Page 13 
his vehicle — if he had been injured, then transferred intent would have applied. I would hold that the more appropriate charge for the damages to Fiorini's vehicle would have been criminal damaging,[29] which prohibits a person from causing or creating a "substantial risk of physical harm to any property of another without the other person's consent."
 {¶ 43} I would hold that the doctrine of transferred intent does not apply when the crime charged is an attempt offense, and when the type of harm intended and the type of harm that resulted are not the same. The holding would apply to the situation here — with the present set of facts, the transferred-intent doctrine should not have been used to convict a person of felonious assault, when there was neither intent to harm a person nor intent to inflict the type of harm that resulted.
 {¶ 44} Because Reese's felonious-assault conviction in case number B-0601265 was based on insufficient evidence, I would reverse that conviction and discharge Reese from further prosecution for that offense.
[8] See People v. Suesser (1904), 142 Cal. 354, 367, 75 P. 1093.
[9] See People v. Birreauta (1984), 162 Cal. App.3d 454, 460,208 Cal.Rptr. 635.
[10] See State v. Crawford, 10th Dist. No. 03AP-986, 2004-Ohio-4652, citing State v. Mullins (1992), 76 Ohio App.3d 633, 636,602 N.E.2d 769.
[11] Mixon, Application of Transferred Intent to Cases of Intentional Infliction of Emotional Distress (1983), 15 Pac.L.J. 147; see, also,People v. Scott (1996), 14 Cal.4th 544, 59 Cal.Rptr.2d 178,927 P.2d 288.
[12] See The Queen v. Saunders Archer (1576), 2 Plowd. 473, 474, 75 Eng.Rptr. 706.
[13] Id.
[14] Id. at 474.
[15] Id.
[16] See, generally, Keeton, Prosser and Keeton on Torts (5 Ed.1984) 37-38.
[17] See In re T.K., 109 Ohio St.3d 512, 2006-Ohio-3056,849 N.E.2d 286, at ¶ 15.
[18] See State v. Bryant (1994), 316 S.C. 216, 218,447 S.E.2d 852.
[19] Id. at 219.
[20] Id. at 218.
[21] Id. at 219.
[22] See Ariz.Rev.Stat.Ann. 13-203(B).
[23] See People v. Fernandez (1996), 88 N.Y.2d 777,673 N.E.2d 910.
[24] Id. at 783.
[25] See, e.g., Jones v. State (1923), 159 Ark. 215, 251 S.W. 690;People v. Chinchilla (1997), 52 Cal.App.4th 683, 60Cal.Rptr.2d 761; People v. Calderon (1991), 232 Cal.App.3d 930,283 Cal.Rptr. 833; State v. Hinton (1993), 227 Conn. 301, 630 A.2d 593;Ford v. State (1993), 330 Md. 682, 625 A.2d 984; State v.Williamson (1907), 203 Mo. 591, 102 S.W. 519; State v. Mulhall (1906),199 Mo. 202, 97 S.W. 583; Fernandez, 88 N.Y.2d 777, 673 N.E.2d 910;State v. Shanley (1905), 20 S.D. 18, 104 N.W. 522.
[26] See Bell v. State (Fla.App.2000), 768 So. 2d 22, 28, citingChinchilla, 60 Cal.Rptr.2d at 764-65; Calderon, 283 Cal.Rptr. at 836-37;Fernandez, 88 N.Y.2d 777, 673 N.E.2d at 914.
[27] See Ford, 330 Md. at 711.
[28] Id. at 714.
[29] R.C. 2909.06. *Page 1