Filed 4/11/16  P. v. Uhl CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061723 |
| v. | (Super.Ct.No. INF1401244) |
| AARON MICHAEL UHL, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Richard A. Erwood, Judge.  Affirmed.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson, Kristine A. Gutierrez, and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Pursuant to a signed felony plea form (Plea Agreement), defendant and appellant, Aaron Michael Uhl, pled guilty to second degree burglary (Pen. Code, §§ 459, 460),[1] and admitted a prison prior for a 2002 grand theft conviction in Idaho (§ 667.5, subd. (b)). The trial court sentenced defendant to the midterm sentence of two years (§§ 461, subd. (b), 1170, subd. (h)(1)), plus one year for the prison prior, with two years to be served in county jail and one year to be served on supervised release.

At the felony settlement conference hearing (the Hearing), the trial court did not orally review the terms of the Plea Agreement with defendant, which included a waiver of defendant's appeal rights, along with his *Boykin-Tahl*[2] rights to a jury trial, cross-examination of his accusers, and his right against self-incrimination, and it did not orally advise defendant that he would have to pay various fees, fines, and victim restitution. The sentencing memorandum – mandatory supervision (Sentencing Memorandum) and minute order included the imposition of a $434.08 booking fee (Gov. Code, § 29550), a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)), $16,249.42 in victim restitution (Pen. Code, § 1203.1, subd. (a)(3)), $119.50 attorney fee (Pen. Code, § 987.8), and a $50 administrative late fee for any fines or fees not paid within 90 days (Pen. Code, § 1205,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Boykin v. Alabama* (1969) 395 U.S. 238, 243 (*Boykin*); *In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*).

subd. (d)). It did not include a $300 "postrelease community supervision revocation restitution fine." (Pen. Code, § 1202.45, subd. (b).)

On this appeal, defendant contends his conviction must be reversed because he did not knowingly, intelligently, and voluntarily waive his appeal rights or his *Boykin-Tahl* rights, and because the trial court committed prejudicial error in failing to conduct an inquiry to ensure that there was a factual basis for the plea. He further contends the fines and fees, along with the victim restitution fine, must be reversed because they were not orally imposed by the trial court. We affirm the trial court's judgment in its entirety.

## II. PROCEDURAL BACKGROUND

A felony complaint alleged that, on or about May 2, 2014, defendant entered a Chase Bank in Palm Springs, California with the intent to commit theft and a felony. Defendant was charged with burglary (§ 459, count 1), making or possessing a check with the intent to defraud (§ 476, count 2), making and passing a counterfeit check (§ 470, subd. (d), count 3), and two counts of receiving stolen property (§ 496, subd. (a), counts 4-5). The felony complaint also alleged that, between 2000 and 2011, defendant suffered six prison priors in Idaho. (§ 667.5, subd. (b).) On May 7, 2014, defendant pled not guilty to all counts and denied the prison prior allegations.

On June 25, 2014, defendant withdrew his plea of not guilty, pled guilty to second degree burglary in count 1, and admitted one prison prior. He executed the Plea Agreement, acknowledging he had been advised of, and was waiving, among other rights, his constitutional rights (1) to a jury trial, (2) to confront and cross-examine witnesses,

3

and (3) against self-incrimination. Defendant also declared that he was aware of the consequences of entering into the Plea Agreement, which included his agreement to pay $16,249.42 in victim restitution, a restitution fine of between $240 and $10,000, as well as "several other fines and fees that will be imposed as a result of this guilty plea." Defendant initialed next to each of the Plea Agreement's advisements, including the statement: "As part of this plea, I (circle one) do / do not waive any right to appeal that I may have." Defendant circled the first "do." The only advisement that defendant did not initial was the line item that stated: "Factual Basis: I agree that I did the things that are stated in the charges that I am admitting." Pursuant to his guilty plea, defendant agreed to serve "2 years in custody[,] 1 year out."

Defendant, his counsel, and the district attorney all signed the Plea Agreement. Above defendant's signature is the statement: "I have read and understand this entire document. I waive and give up all of the rights that I have initialed. I accept this Plea Agreement." Defendant's counsel signed below the statement: "I am the attorney for the defendant. I am satisfied that (1) the defendant understands his/her constitutional rights and understand that a guilty plea would be a waiver of these rights; (2) the defendant has had an adequate opportunity to discuss his/her case with me, including any defenses he/she may have to the charges; and (3) the defendant understands the consequences of his/her guilty plea. I join in the decision of the defendant to enter a guilty plea."

Defendant filed his notice of appeal on August 14, 2014. The next day, on August 15, 2014, the trial court granted defendant's request for certificate of probable cause

(§ 1237.5), wherein defendant stated: "The representation offered by counsel was so grievous that my 6th Amendment right to assistance of counsel was denied. Two of many examples follow: when I was advised by counsel to sign the plea-agreement knowing that the amount of restitution requested was so erroneous that the amount had to be the result of fraud. I was led to believe my sentence would end on or about 07/09/2014 and this is clearly not the truth."

On August 22, 2014, the court granted defendant's *Marsden*[3] motion, and appointed conflict counsel. At the *Marsden* hearing, the court recognized that defendant was considering a motion to withdraw his plea, and, after granting the *Marsden* motion, it set a further hearing to give defendant sufficient time to speak with his new counsel regarding the withdrawal of his guilty plea. On September 11, 2014, defendant's new counsel advised the court defendant had reconsidered and no longer wished to withdraw his guilty plea.

## III. DISCUSSION

A. *Defendant Knowingly, Intelligently, and Voluntarily Waived his Boykin-Tahl and Appeal Rights, and the Trial Court's Failure to Conduct a Factual Basis Inquiry Was Harmless*

1. Background—The Hearing and Plea Agreement Terms

The trial court accepted defendant's guilty plea at the Hearing on June 25, 2014, the same day defendant signed the Plea Agreement. At the Hearing, defense counsel

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

5

advised the trial court that "there will be a plea. [Defendant] will be pleading guilty to count 1, a second degree burglary, and admitting one prison prior. The first one is fine. He will be sentenced under [section] 1170[, subdivision] (h) to three years county jail, two years in custody, one year on supervised release. His credits are 55 plus 54 for a total of 109. Standard terms and conditions along with restitution in the amount of $16,249.42 payable to [the victim]." After the district attorney confirmed to the court that these terms were correct, the court asked defendant: "[W]ith respect to count 1, you're charged with second degree burglary. What is now your plea?" Defendant responded: "I plead guilty."

The trial court then asked defendant to admit a prison prior related to the fraudulent use of a financial transaction card in Idaho, to which defendant responded: "I—it's hard to admit that one because it was an *Alford*[4] plea, so I don't know—there's another one that I had that wasn't an *Alford* plea." He also clarified that an "*Alford* plea" in the State of Idaho is "kind of a no contest, how you guys do it here." He then admitted a prison prior for grand theft by possession. The trial court confirmed that defendant agreed to be sentenced to "the midterm of two years, plus one year for the prior prison commitment." In imposing the sentence, the trial court explained that two years would be served in county jail, and one year would be served on supervised release. It also confirmed defendant would be awarded 109 total days of custody credit. Lastly, the trial

_____

**4** *North Carolina v. Alford* (1970) 400 U.S. 25 (*Alford*).

6

court granted the People's motion to dismiss counts 2 through 5 pursuant to section 1385, and it struck defendant's five remaining prison prior allegations.

Defendant's agreement to plead guilty to second degree burglary in count 1, and his admission of one prison prior, were reflected in the signed Plea Agreement, the Sentencing Memorandum, which was signed by defendant, his counsel, the People, and the trial court judge, and in the minute order for the Hearing. The Sentencing Memorandum and minute order state that a $434.08 booking fee, $300 restitution fine, $16,249.42 victim restitution, and $119.50 attorney fee were being imposed as part of defendant's plea.

The minute order also included the following pronouncements: "Felony Plea form is incorporated herein and includes the following advisements and waivers: [¶] Defendant advised of right to a speedy and public trial by judge or jury. [¶] Defendant advised of right to confront and cross[-]examine witnesses; right to present evidence on own behalf. [¶] Defendant advised of right to ask court to compel witnesses to attend trial at no expense. [¶] Defendant advised of privilege against self-incrimination. [¶] Defendant advised of right to counsel; cont. to consult counsel; assignment of counsel if unable to employ private counsel. [¶] Defendant waives right to Trial by Jury. [¶] Defendant waives right to confront and cross[-]examine witnesses. [¶] Defendant waives right to ask court to compel witnesses to attend trial at no expense. [¶] Defendant waives privilege against self[-]incrimination. [¶] Defendant advised of charges and consequences of his/her plea and statutory sentencing. [¶] Defendant Advised of

7

Constitutional Rights. [¶] Defense Counsel concurs in Defendant[']s plea and/or admissions. [¶] Court finds plea is free & voluntary. Crt finds deft knows & understands constitutional rights, nature of charges & consequences of his/her plea. [¶] Court finds factual basis for the plea is based on OSD-Oral Statement from Defendant on the record. [¶] Court Accepts Plea."

As noted, defendant filed his notice of appeal on August 14, 2014, and was appointed new counsel on August 22, 2014. On September 11, 2014, nearly three months after pleading guilty to second degree burglary, and after having time to consider the withdrawal of his plea, defendant's newly-appointed counsel advised the court that defendant was "not going to pursue his motion to withdraw his plea."

2. <u>Analysis</u>

Defendant contends the judgment must be reversed because the trial court failed to ensure that defendant knowingly, intelligently, and voluntarily waived his appeal rights. He also contends that, under the totality of the circumstances, he did not knowingly and intelligently waive his *Boykin-Tahl* rights against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. (*Boykin*, *supra*, 395 U.S. at p. 243; *Tahl*, *supra*, 1 Cal.3d at p. 132.) He also asserts that the judgment must be reversed because the trial court failed to make an inquiry to confirm there was a factual basis for the plea. We reject each of these claims.

8

(a) *Under the Totality of Circumstances, Defendant's Waiver of His Appeal and Boykin-Tahl Rights Was Knowing, Intelligent, and Voluntary*

When a defendant enters a guilty plea, "[t]he court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea." (§ 1192.5.) However, a court may rely upon a defendant's validly executed plea agreement as a proper substitute for personal admonishment that a defendant is waiving his right to appeal (*People v. Panizzon* (1996) 13 Cal.4th 68, 83 (*Panizzon*); *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1659 (*Vargas*); *People v. Castrillon* (1991) 227 Cal.App.3d 718, 722), or that he is waiving his *Boykin-Tahl* rights (*In re Ibarra* (1983) 34 Cal.3d 277, 285, disapproved on other grounds in *People v. Mosby* (2004) 33 Cal.4th 353, 360-361 (*Mosby*); *Mills v. Municipal Court* (1973) 10 Cal.3d 288, 292).

Where a defendant contends he was not given proper *Boykin-Tahl* warnings at the time of entering his guilty plea, the standard is "whether, under the totality of the circumstances, defendant's admission was voluntary and intelligent . . . ." (*Mosby*, *supra*, 33 Cal.4th at p. 360.) This court has explained "an express waiver of the right of appeal made pursuant to a negotiated plea agreement is valid provided defendant's waiver is knowing, intelligent and voluntary." (*Vargas*, *supra*, 13 Cal.App.4th at p. 1659.) Where both defendant and his attorney signed an appeal waiver form, and attested to the defendant's knowing and voluntary relinquishment of his appeal rights, courts have

9

concluded that the defendant's waiver was knowing and voluntary. (*Panizzon*, *supra*, 13 Cal.4th at pp. 83-84; *People v. Castrillon*, *supra*, 227 Cal.App.3d at p. 722.)

Here, defendant executed the Plea Agreement on June 25, 2014, wherein he initialed on the line items advising that he had, among other rights, a right to a jury trial, to face and cross-examine witnesses, and against self-incrimination, i.e., defendant's *Boykin-Tahl* rights. He also circled the first "do" and initialed on the line item that stated: "As part of this plea, I (circle one) do / do not waive any right to appeal that I may have."

By signing the Plea Agreement, defendant represented he had "read and underst[ood] [the] entire document," and he "waive[d] and [gave] up all of the rights that [he] [had] initialed." In addition, defendant's attorney signed the Plea Agreement, representing that (1) defendant understood and waived the constitutional rights delineated in the Plea Agreement, (2) defendant and his attorney had discussed the case, (3) defendant understood the consequences of the guilty plea, and (4) defense counsel agreed with the decision of defendant to enter a guilty plea.

At the Hearing, defendant pled guilty to second degree burglary, and he was knowledgeable regarding the details of his prior strikes, correcting the trial court, and his own counsel, that his prior strike was for a grand theft conviction, not, as the court initially inquired, the fraudulent use of a financial transaction card that resulted in an "*Alford* plea in the state of Idaho, where it's a not guilty. Like, kind of a no contest, how you guys do it here."

10

Even after pleading guilty to second degree robbery at the Hearing, defendant had other opportunities to challenge or withdraw from the plea, yet elected not to. At the August 22, 2014, *Marsden* hearing, the court was aware that defendant was considering a motion to withdraw his plea, and it set a future hearing in anticipation of defendant's motion to withdraw from the plea. However, at the hearing that was held on September 11, 2014, defendant's new counsel advised the court that defendant had elected not to withdraw his guilty plea, his new counsel representing to the court defendant "desire[d] no further proceedings at this time."

Regarding the waiver of his right to appeal, defendant contends *Panizzon* and *Vargas* are distinguishable because, in those cases, the court conducted an in-court inquiry pursuant to section 1192.5. He also argues that, unlike the defendant in *Vargas*, he "was unfamiliar with California criminal procedures," and "there are reasons to doubt that he knowingly waived [his appeal] rights as part of a plea agreement." Defendant also argues that, under the totality of the circumstances, he did not knowingly and intelligently waive his *Boykin-Tahl* rights because the trial court made no attempt to determine whether defendant actually read and understood these rights (*People v. Howard* (1992) 1 Cal.4th 1132, 1179), and because there was no indication defendant was familiar with the California criminal justice system (*Mosby*, *supra*, Cal.4th at pp. 364-365). Additionally, defendant contends his trial counsel did not effectively represent him, claiming that counsel misled him as to the consequences of the plea.

11

We reject defendant's contentions, as, under the totality of the circumstances, defendant's waiver of his appeal rights, as well as his *Boykin-Tahl* rights, was knowing, intelligent, and voluntary. Here, as in *Vargas*, "[t]he written waiver of the right of appeal demonstrates, *independent of the oral advisement by the court*, [that] defendant was informed sufficiently of this right to knowingly and intelligently waive [his right to appeal]." (*Vargas*, *supra*, 13 Cal.App.4th at p. 1661, italics added.) "The fact a defendant received advice of counsel" is another factor to consider in determining whether "the waiver was knowing, intelligent and voluntary." (*Ibid.*) In addition, "[a]lthough a defendant may not know the specific nature of the appeal he is giving up in return for dismissal of pending charges, if he understands he is receiving a benefit in return, his decision to enter into the agreement reflects a highly rational judgment, and that is sufficient to make the plea and waiver knowing, intelligent and voluntary." (*Ibid.*)

Furthermore, "'a defendant's prior experience with the criminal justice system' is . . . 'relevant to the question [of] whether he knowingly waived constitutional rights [such as *Boykin-Tahl* rights].' [Citation.] That is so because previous experience in the criminal justice system is relevant to a recidivist's '"knowledge and sophistication regarding his [legal] rights."' [Citations.]" (*People v. Mosby*, *supra*, 33 Cal.4th at p. 365, fn. omitted.) Here, defendant exhibited familiarity with the criminal justice system when he explained to the court that one of his Idaho convictions was pursuant to an "*Alford* plea in the state of Idaho, where it's a not guilty. Like, kind of a no contest, how you guys do it here."

12

As to defendant's contention that his trial counsel misled him regarding the consequences of the plea and that he received ineffective assistance of counsel, defendant had the opportunity to withdraw his guilty plea even after his appointed counsel was replaced, yet defendant did not avail himself of that opportunity. Under the totality of these circumstances, defendant's waiver of his appeal rights, along with his *Boykin-Tahl* rights, was knowing, intelligent, and voluntary, despite the absence of a specific admonishment by the trial court. (*Mosby*, *supra*, 33 Cal.4th at p. 360; *Panizzon*, *supra*, 13 Cal.4th at p. 84; *In re Ibarra*, *supra*, 34 Cal.3d at p. 285; *Vargas*, *supra*, 13 Cal.App.4th at p. 1659; *People v. Castrillon*, *supra*, 227 Cal.App.3d at p. 722.)

(b) *The Failure to Conduct a Factual Basis Inquiry Was Harmless*

Because defendant knowingly, intelligently, and voluntarily waived his right to appeal, he has also waived his right to appeal the judgment based on the trial court not conducting an inquiry to determine that there was a factual basis for defendant's guilty plea. (*Panizzon*, *supra*, 13 Cal.4th at p. 83; *Vargas*, *supra*, 13 Cal.App.4th at p. 1659; *People v. Castrillon*, *supra*, 227 Cal.App.3d at p. 722.) In any event, the trial court's error in not conducting a factual basis inquiry was harmless.

As noted, section 1192.5 provides that if the trial court approves a negotiated plea, it must independently inquire whether a factual basis exists for a guilty plea. "The purpose of the factual basis requirement is to help ensure that the constitutional standards of voluntariness and intelligence are met." (*People v. Palmer* (2013) 58 Cal.4th 110, 118.) In effect, section 1192.5 requires the court to "'satisfy itself . . . that there is a

13

factual basis for the plea.'" (*People v. Holmes* (2004) 32 Cal.4th 432, 435.) The purpose of the inquiry is "to '"protect against the situation where the defendant, although he realizes what he has done, is not sufficiently skilled in law to recognize that his acts do not constitute the offense with which he is charged."'" [Citations.]" (*People v. Wilkerson* (1992) 6 Cal.App.4th 1571, 1576.)

"[T]he law 'does not require the trial court to interrogate a defendant personally in an element by element manner about the factual basis for his guilty plea.'" (*People v. Calderon* (1991) 232 Cal.App.3d 930, 935.) Instead, "[t]he factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges." (*People v. Holmes*, *supra*, 32 Cal.4th at. p. 441, fn. omitted.)

The trial court's finding that there is a factual basis for the plea is reviewed for abuse of discretion. (*People v. Holmes*, *supra*, 32 Cal.4th at pp. 442-443.) "A finding of error under this standard will qualify as harmless where the contents of the record support a finding of a factual basis for the [negotiated] plea." (*Id.* at p. 443; *People v. Coulter* (2008) 163 Cal.App.4th 1117, 1122.)

At the Hearing, the court did not conduct an inquiry to confirm that a factual basis existed for defendant's guilty plea, but the error was harmless, as the felony complaint provided a sufficient factual basis for defendant's guilty plea. In count 1 of the felony complaint, it was alleged that "defendant committed a violation of Penal Code section 459, a felony, in that on or about May 2, 2014, in the County of Riverside, State of California, he did wilfully and unlawfully enter a certain building located at Chase Bank,

14

499 S. Palm Canyon, Palm Springs, CA, with intent to commit theft and a felony." Defendant expressly acknowledged during the Hearing that he was pleading guilty to second degree burglary in count 1 based on his entry into a Chase Bank.

Furthermore, defense counsel advised the trial court that defendant would plead guilty to second degree burglary in count 1, that he would admit one prison prior, and that he would be sentenced to the midterm of three years, with two years served in county jail and one year on supervised release. The trial court immediately confirmed the terms with the district attorney, and then asked defendant, "with respect to count 1, you're charged with second degree burglary. What is now your plea?," to which defendant responded, "I plead guilty." After confirming that defendant was agreeing to a prison prior, and after confirming the terms of defendant's sentence, the court then dismissed counts 2 through 5, and struck defendant's five other prison priors. Under these circumstances, we find that there was a sufficient factual basis for defendant's guilty plea as to count 1, second degree burglary.

Defendant asserts that the complaint, by itself, is insufficient to satisfy section 1192.5 because the complaint "is couched largely in the language of the statute, rather than setting forth the facts underlying the charge." He argues that, pursuant to *People v. Willard* (2007) 154 Cal.App.4th 1329, 1331, "[t]his is not enough to satisfy the purpose of the factual basis inquiry, to corroborate what defendant had already admitted by his plea." However, as the court in *People v. Palmer*, *supra*, 58 Cal.4th 110 explained, a trial court is afforded flexibility in establishing a factual basis for the plea, as the primary goal

15

of section 1192.5 is to "assur[e] that the defendant entered the plea voluntarily and intelligently." (*People v. Palmer*, *supra*, at p. 119.) And here, the complaint and Plea Agreement, along with the statements made by the court, defendant, and counsel for both defendant and the People, show defendant entered the plea voluntarily and intelligently.

Furthermore, the purpose of section 1192.5's factual basis inquiry is to protect a defendant who """"is not sufficiently skilled in law to recognize that his acts do not constitute the offense with which he is charged.""" (*People v. Wilkerson*, *supra*, 6 Cal.App.4th at p. 1576.) Defendant is not the type of defendant that section 1192.5 was most concerned with. As noted, defendant was charged on May 7, 2014, with five counts of crimes against property—burglary (§ 459, count 1), check fraud, (§ 476, count 2), forgery (§ 470, subd. (d), count 3), and two counts of receiving stolen property (§ 496, subd. (a), counts 4-5). It was also alleged he had six prison priors in Idaho, with his convictions spanning from 2000 through 2011. More importantly, during the Hearing, defendant exhibited an astute understanding of plea agreements when he advised the court and his counsel that he could not admit to a 2002 prison prior for the fraudulent use of a financial transaction card, but specifically identified another prison prior that was not the result of an "*Alford*" plea."

Although defendant waived his right to challenge the judgment by executing the Plea Agreement, the trial court's error in failing to conduct a factual basis inquiry was harmless, as defendant entered the plea knowingly, voluntarily, and intelligently.

16

B.  *The Fines and Fees Were Properly Imposed*

Defendant next argues that this court must strike all of the fees and fines that were not imposed orally by the court.  We reject defendant's contention.

1.  Background—Fees and Fines

The Plea Agreement stated that defendant agreed to pay victim restitution in the amount of $16,249.42, along with "a restitution fine of at least $240 and not more than $10,000.  There are several other fines and fees that will be imposed as a result of this guilty plea."

At the Hearing, held on the same day defendant entered into the Plea Agreement, defendant's counsel advised the court that the terms of the plea included "[s]tandard terms and conditions along with restitution in the amount of $16,249.42 payable to [the victim]."  The court accepted defendant's guilty plea, but it did not orally advise defendant of the fees and fines that were being imposed.

On the same day, the Sentencing Memorandum was prepared.  The Sentencing Memorandum specified the imposition of a booking fee of $434.08, a restitution fine of $300, victim restitution of $16,249.42, and an attorney fee of $119.50, the county's standard rate for one hour of an attorney's time.  Defendant would be responsible for an additional $50 administrative fee if any of his fees or fines were not paid within 90 days.  Defendant signed the Sentencing Memorandum under the advisement:  "I have read, I understand, and I accept these terms and conditions of mandatory supervision on pages one and two."  Defense counsel, the district attorney, and the trial court judge also signed

17

the Sentencing Memorandum. A minute order, which reflected the fees and fines specified in the Sentencing Memorandum, was also prepared.

In his request for certificate of probable cause, dated August 12, 2014, defendant claimed for the first time that "the amount of restitution [of $16,249.42] requested was so erroneous that the amount had to be the result of fraud." At the *Marsden* hearing, defendant advised the court that he believed the amount of restitution was "absolutely wrong," but he made no mention of the other fines and fees. The court held a further hearing in anticipation of defendant withdrawing from the Plea Agreement, but defendant elected not to withdraw his guilty plea or challenge the imposed fees and fines.

2. <u>Analysis</u>

(a) *The Amount of the Victim Restitution and Restitution Fine Were Within the Trial Court's Discretion*

Section 1202.4 mandates the imposition of a "separate and additional restitution fine" "[i]n every case where a person is convicted of a crime." (*Id.*, subd. (b).) For felony convictions after January 1, 2014, the restitution fine "shall be" between $300 and $10,000, with the amount being "set at the discretion of the court and commensurate with the seriousness of the offense." (*Id.*, subd. (b)(1).) In addition, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (*Id.*, subd. (f).)

18

"'[B]efore taking a guilty plea the trial court must admonish the defendant of both the constitutional rights that are being waived and the direct consequences of the plea.' [Citation.] 'A possible . . . restitution fine constitutes such a direct consequence' [citation] . . . . However, . . . because 'advisement as to the consequences of a plea is not constitutionally mandated,' 'the error is waived absent a timely objection.' [Citation.]" (*People v. Villalobos* (2012) 54 Cal.4th 177, 181-182.) Because defendant failed to object to the restitution fine and victim restitution at or after the time he executed the Sentencing Memorandum, the court's failure to mention the fees and fines does not entitle defendant to a reversal. Furthermore, the victim restitution of $16,249.42 was a term of defendant's Plea Agreement. Thus, by failing to object to this amount at the Hearing, he has waived his claim as to this amount.

Furthermore, because a restitution fine is a "statutorily mandated term" (*People v. Villalobos*, *supra*, 54 Cal.4th at p. 183), a trial court's "failure to address the amount of a restitution fine . . . during the plea colloquy does not transform imposition of such a fine into a violation of the plea agreement. Instead, where neither the parties nor the trial court has specified the fine amount in the context of a plea bargain, '[t]he restitution fine shall be set at the discretion of the court . . . .' [Citation.]" (*Id.* at pp. 185-186.)

Here, defendant acknowledged in the Plea Agreement that he would be responsible for $16,249.42 in victim restitution, along with a restitution fine between $240 and $10,000. At the Hearing, defense counsel also specified that the plea included "restitution in the amount of $16,249.42 payable to [the victim]." During the plea

19

colloquy, the trial court made no mention of the restitution fine, but ultimately imposed a $300 restitution fine, which, as the *Villalobos* court explained, is within the trial court's discretion to do, even when, as here, the trial court failed to specify the amount of the restitution fine during the plea colloquy. (*People v. Villalobos*, *supra*, 54 Cal.4th at pp. 185-186.)

(b) *Defendant Waived His Challenge to the Imposition of the Booking, Attorney, and Administrative Fees*

Section 987.8, subdivision (b) provides, in pertinent part: "In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court . . . the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof."

Section 29550, subdivision (c) of the Government Code authorizes the imposition of a booking fee, stating: "Any county whose officer or agent arrests a person is entitled to recover from the arrested person a criminal justice administration fee for administrative costs it incurs in conjunction with the arrest if the person is convicted of any criminal offense related to the arrest, whether or not it is the offense for which the person was originally booked."

Courts have held that a defendant's failure to challenge the imposition of fees in the trial court, including his ability to pay the imposed fees, precludes him from doing so on appeal. (*People v. Aguilar* (2015) 60 Cal.4th 862, 864 [booking fee and attorney

20

fees]; *People v. Trujillo* (2015) 60 Cal.4th 850, 853 [probation supervision and presentence investigation fees]; *People v. McCullough* (2013) 56 Cal.4th 589, 598 [booking fee].)  In *Aguilar*, the defendant had two opportunities to object to the fees the court imposed—at sentencing, and at subsequent proceedings before the probation officer—but he failed to object at either opportunity.  (*People v. Aguilar*, *supra*, at pp. 867-868.)  The *Aguilar* defendant also did not raise the issue regarding the imposition of booking and attorney fees in his petition for review to the Supreme Court.  (*Id.* at p. 868.)  Based on those facts, the court explained that applying the forfeiture rule to the defendant was "especially appropriate."  (*Id* at. p. 867.)

As in *Aguilar*, defendant here had multiple opportunities to challenge the imposition of the $434.08 booking fee, the $119.50 attorney fee, and the $50 administrative fee, as well as to challenge his ability to pay these fees, but "availed himself" of none of those opportunities.  (*People v. Aguilar*, *supra*, 60 Cal.4th at p. 867.)  On June 25, 2014, defendant could have chosen not to sign the Sentencing Memorandum, or he could have requested a further hearing regarding the fees that were being imposed, yet he did neither.  "'Although the sentencing hearing is, in general, the proper time for a defendant to assert all available procedural and factual contentions relating to the trial court's sentencing choices, in an appropriate case a defendant's discovery [of new facts] may constitute a change of circumstances supporting a postsentencing request for such a hearing.'"  (*Id.* at p. 868; *People v. Trujillo*, *supra*, 60 Cal.4th at p. 861.)

When he filed his notice of appeal on August 14, 2014, and prepared his request for certificate of probable cause on August 12, 2014, defendant made no mention of the $434.08 booking fee, $119.50 attorney fee, or $50 administrative fee. At his *Marsden* hearing on August 22, 2014, defendant again did not raise his objection to the imposition of these fees. Lastly, on September 11, 2014, defendant had the opportunity to withdraw his plea based on his objection to these fees, yet he chose not to do so.

Additionally, just as the forfeiture rule applies to defendant's failure to object to the booking, attorney, and administrative fees, it also applies to the presumption of defendant's ability to pay the imposed fees. "'Given that imposition of a fee is of much less moment than imposition of sentence, and that the goals advanced by judicial forfeiture [were equally relevant in the fee context], we [see] no reason . . . to conclude that the rule permitting challenges made to the sufficiency of the evidence to support a judgment for the first time on appeal "should apply to a finding of" ability to pay [fees].'" (*People v. Trujillo*, *supra*, 60 Cal.4th at p. 857; *People v. McCullough*, *supra*, 56 Cal.4th at p. 599.)

Defendant primarily relies on *People v. Zackery* (2007) 147 Cal.App.4th 380 and *People v. Lopez* (2013) 218 Cal.App.4th Supp. 6 for the proposition that the fees and fines must be stricken because they were not orally imposed by the trial court. At issue in *Zackery* was a $200 restitution fine (§ 1202.4) and a $200 parole revocation fine (§ 1202.45) that were not orally imposed, but were included in the minute order. (*People v. Zackery*, *supra*, 147 Cal.App.4th at pp. 387-388.) In *Lopez*, the trial court did not

specify in open court the specific fines and fees that it was imposing on the defendant, and the minute order and the misdemeanor sentencing memorandum were not consistent with each other as to the specific fines and fees, as well as their amounts, being imposed. (*People v. Lopez*, *supra*, 218 Cal.App.4th Supp. at p. 12.)

Neither of these cases addressed the issue of whether defendant forfeited his claim of error by failing to timely object to the fees and fines. We agree with defendant's assertion that "the forfeiture doctrine only applies if the appellant had a reasonable opportunity to object to the sentencing choice." And here, as noted, defendant had multiple opportunities to object to the fees and fines that were imposed—he had the opportunity not to sign the Sentencing Memorandum and request a hearing regarding the fines and fees, he could have raised the issue at his *Marsden* hearing, or at the anticipated change-of-plea hearing—yet he opted not to raise his objection at any point prior to this appeal. By not doing so, he has forfeited his claim of error regarding the imposition of the booking fee, attorney fee, and the administrative late fee.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

McKINSTER
J.